Hannah **HARRISON** et al., Appellants,

v.

**Gus E. BROWN, Jr.**, et al., Appellees.

No. 224.

Court of Civil Appeals of Texas.

Corpus Christi.

May 18, 1967.

Rehearing Denied June 15, 1967.

Lawrence P. Gwin of Bell, Gwin & Furse, Bay City, Mills, Shirley & McMicken, Galveston, for appellants.

Joe Entzminger, of Entzminger & Uher, Bay City, Chester M. Fulton, of Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellees.

NYE, Justice.

## OPINION

Marguerite Thompson Watson, Audrey Thompson Norton and Hannah Thompson Harrison, three of the five granddaughters of Hannah Thompson, filed this action for declaratory relief and construction of her will. Plaintiffs alleged in effect that they and a fourth sister Thelma Thompson Davis Barter, were entitled under the last will and testament of Hannah Thompson, deceased, to the undivided one-fifth fee simple remainder interest in some 650.95 acres of land devised by the said grandmother Hannah Thompson to one of the five sisters, Pauline Thompson Britton Brown. It was alleged that the reason that these four granddaughters were entitled to the undivided one-fifth interest previously belonging to their sister Pauline was that she "died without issue."

Gus E. Brown, Jr., the surviving husband of Pauline Thompson Britton Brown, answered and filed a motion for summary

judgment alleging complete ownership in himself of such undivided one-fifth interest by virtue of his wife's will, and under the will of Hannah Thompson, Pauline's grandmother. Thelma Thompson Davis Barter was represented by The United States National Bank of Galveston (independent executor and trustee under the will and codicil of Thelma Thompson Davis Barter). They intervened and adopted plaintiffs' allegations. The three surviving sisters and the bank as independent executor then filed their motion for summary judgment contending that they were entitled under the last will and testament of the grandmother Hannah Thompson to the undivided one-fifth fee simple remainder interest in the land devised by the said Hannah Thompson to their sister Pauline for the reason that Pauline had "died without issue." The two motions were consolidated for hearing and by agreement of the parties the issue submitted for determination was limited to the proper construction and interpretation of Hannah Thompson's will.

The district court entered judgment: finding that no genuine issue of fact existed regarding the meaning, construction and interpretation of the Hannah Thompson will; denying plaintiffs' (the three surviving sisters' and intervenor bank's) motion for summary judgment; granting defendant's motion for summary judgment and construing the will of Hannah Thompson as giving to Pauline Thompson Britton Brown an undivided one-fifth fee simple remainder interest in the disputed 650.95 acres. The plaintiffs (and intervenor) have perfected their appeal. We affirm.

In 1912 Hannah Thompson, the grandmother, executed a will and certain codicils, the relevant provisions of which are quoted verbatim as follows:

### THE 1912 ORIGINAL WILL

"Fourth:—To my son, John E. Thompson, * * * I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, * * *. And among the residue and remainder of the lands of my estate, and by this item, devised and passing to my said son, John E. Thompson, and so intended to pass to him by this my last will, I specially mention that certain 968 acre tract of land * * * known as the Hiram F. Hall tract. * * *"

In 1920 an important amendment to Hannah Thompson's will was made in the form of a codicil. It reads as follows:

"Second: And, whereas, in the fourth clause of my said original will I did give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, unto my said son, John E. Thompson, and among the residue and remainder of the lands of my estate, there devised, a certain tract of nine hundred and sixty-eight (968) acres of land, * * *, was intended to pass by said devise to him; I here now revoke said devise in fee to my said son, John E. Thompson, as set forth in said clause of my said original will, and I do here now give and devise the said residue of my real property described in said fourth clause of my said original will, and more specifically said nine hundred and sixty-eight (968) acres of land described therein, and here in and here now referred to, *unto my said son John E. Thompson during his life, and after his death in fee to his children, Marguerite Thompson, Pauline Britton, wife of Albert B. Britton,[1] Audrey Thompson, Hannah Thompson and Thelma Thompson, and to such other children of his body which may be born to him, share and share alike, but should any of said children die without issue, then the share of such child or children so dying without issue is hereby devised in fee to the survivor or survivors of such child or children of my said son, John E. Thompson. Now,*

---

1. First husband of Pauline Thompson; her second husband was Gus E. Brown, Jr., original defendant herein.

*should all the children now born to my said son John E. Thompson, or which may hereafter be born to him, die without issue, then the fee herein devised to said children is hereby devised to my said son John E. Thompson, and I do hereby ratify and confirm my said original will dated on said 31st day of January, A.D. 1912, and herein first above referred to in every other respect."* (Emphasis supplied.)

Subsequently, Hannah Thompson executed a second and third codicil; in one she explained that portions of the original 968 acres had been sold, leaving a total of 650.95 acres. The other codicil is not material to this appeal. Upon grandmother Hannah Thompson's death in 1929, her will including all three codicils were admitted to probate. On her death Hannah Thompson owned the 650.95 acres in question. She was survived by her son John E. Thompson and by his five daughters, Marguerite, Audrey, and Hannah (the three plaintiffs herein), and by Thelma (now deceased, but here represented by intervenor), and by Pauline.

John E. Thompson, son of Hannah Thompson and father of the five daughters named in her will, died in 1938. He was survived by all of his five daughters. He never had any other children nor did he ever adopt any other children. One daughter, Thelma Thompson Davis Barter, died in 1958. As appellant she is represented herein by The United States National Bank of Galveston, executor, as intervenor herein. Thelma was survived by her daughter Carla Nan Davis Brooks.[2]

Pauline died in 1963 without issue and without adopting any children. In her will she left her residuary estate, including her undivided one-fifth interest in the 650.95 acres to her husband Gus E. Brown, Jr. Gus E. Brown, Jr. was the original named defendant in this case; however, he died in 1965 after the hearing on the motions

for summary judgment, but before judgment was entered. In his will Gus E. Brown, Jr. left his residuary estate, including his interest in the disputed 650.95 acres to Joe Brown and Carla Nan Davis Brooks, the great granddaughter of Hannah Thompson, being the daughter of Thelma Thompson Davis Barter. Joe Brown and Carla Nan Davis Brooks being the devisees of Gus E. Brown, who was the husband and devisee under the will of Pauline, the sister of appellants, are the appellees herein.

All of the parties to the appeal agree that the language in the clause of the will in question effectively creates a life estate in John E. Thompson with a vested remainder of his five named children then in being, subject to the diminution of the remainders by the birth of additional children of John E. Thompson. It is appellants' contention that "die without issue" means at any time; where John E. Thompson's children received the land in fee such language creates a vested base or determinable fee subject to being divested only on the occurrence of a condition subsequent, that is upon John E. Thompson's children's death without issue at any time. Appellees, on the other hand, contend that "die without issue" refers to the time of the death of the testatrix or at the very latest at the time of the death of the life tenant. One of the most fundamental principles governing construction of wills is that every provision of the will must be considered to ascertain the true testamentary intent and that any particular language must yield to the manifest overall intention. Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943, at 946 (1958); McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 (1887). In considering every provision of the will each clause thereof must be construed so as to harmonize with all other clauses in the light of the circumstances of their formation. Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903 (1954).

---

**2.** Carla Nan Davis Brooks is one of the appellees herein because of a special devise in Gus E. Brown, Jr.'s will and not by any intestate inheritance.

The questioned provision contained in Hannah Thompson's codicil to her will gives the land to her son "during his life, and after his death in fee to his children * * *" naming them. This in our opinion evidences an intent for the land to vest indefeasably upon the death of John E. Thompson. The provision in the codicil further states that should he have other children than those named, they will share and share alike with the named children "but should any of said children die without issue, then the share of such child or children so dying without issue is hereby devised in fee to the survivor or survivors of such child or children of my said son, John E. Thompson." We construe this as being a further provision to take into account events that might take place during the lifetime of John E. Thompson. This intent of the testatrix is made clear by the following provision in the codicil which says: "Now, should all the children now born to my said son John E. Thompson, or which may hereafter be born to him, die without issue, then the fee herein devised to said children is hereby devised to my said son John E. Thompson. * * *" It is evident to us that in the event that there was a catastrophe and all the children died without issue, then John would have had the enjoyment of the land in fee rather than the life estate. In the original will, the son John was to have the land in question in fee simple absolute. In the codicil the testatrix recognized this fee but conditionally revoked such provision of her original will and created the life estate instead with the remainder in her grandchildren. Following the particular provision in the codicil that in the event that all of the children should "die without issue" then son John was to have the fee title, she reconfirms and ratifies her original will "in every other respect", which would have given him the present enjoyment of the fee simple title.

A reading of the entire will including the three codicils does not indicate in any way that the testatrix desired to place any conditions whatever on her advancements to her other children or to those receiving her testamentary gifts. She did not intend to restrict her devises once the property was in the hands of the beneficiaries. There was no intent in the will to keep the estate in the hands of her blood descendants. The original will, for instance, recognized that she had made advancements to her children (sisters of John E. Thompson) some of whom were married, with full power of disposition. This was done at a time when the advancements were subject to the sole control of the testatrix's daughters' husbands.[3] In the testatrix's will she specifically devised her "homestead tract of land" as well as other properties outright to a particular married daughter, and then in her third codicil she devised her homestead to her son's wife outright in lieu of the previous devise made of such property in her second codicil to her own daughter. We believe that a testamentary intent can be gleaned from the overall intention of the testatrix in light of the circumstances, that evidences an early vesting of the bounty of the testatrix's estate in her beneficiaries, surely no later than upon the death of her son John E. Thompson. It has almost been universally held that vesting at the earliest possible time is favored by the law. Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888 (1948). This intent is further strengthened by the physical facts that existed at the time that the testatrix made her will. The testatrix's son John had five daughters, only one of whom was married, and this daughter did not have issue born at the time of the making of the will. It would be natural that the final vesting of the estate of the granddaughters would follow the life estate in her (Hannah Thompson's) son, with the provision that if one of such granddaughters died without

---

3. Prior to 1913 the law confided to the husband the management of all the property including the wife's separate property. 13 Vernon's Annotated Civil Statutes, 1, 39 (1960).

issue her share would go to the other granddaughters.

■ We hold that the intent of the testatrix is expressed throughout the will and the codicils giving rise to the vesting of the estate in the five children of John E. Thompson absolute upon his death.

■ The appellant contends that the term "die without issue" is ambiguous and that we should construe it to mean "at any time". Rules of construction are resorted to by the courts only when the will itself does not disclose the testamentary intent. Johnson v. Moore, 223 S.W.2d 325 (Tex.Civ.App.—Austin 1949, writ ref'd). If it became necessary to resort to a rule of construction where the intention of the testatrix does not otherwise clearly appear from the contents of the will, we find that "die without issue" has been resolved by the Commission of Appeals in the case of Flores v. De Garza, 44 S.W.2d 909 (Tex.Com.App. 1932). In the Flores case the will provided as follows:

"3rd. I give and bequeath to my beloved wife, Leonarda Benavides Cuellar all my property, * * * to have and to hold during her natural life, and at her death to be equally divided between Filemon Flores * * * and Eulalia Dominguez * * *.

4th. *In case either of the beneficiaries should die without issue, then the whole of the estate shall go to the survivor or his or her issue.*" (44 S.W.2d at 910) (Emphasis supplied.)

In this case the court said:

"* * * *They* (the plaintiffs in error and the appellants in this case) *insist that the provision contained in the fourth paragraph of the will has effect to convert the estate acquired by Eulalia under the will into a qualified fee, which is determinable upon the contingency of her dying without issue, regardless of when the latter event occurs. We do not think that the will should be so interpreted.* By paragraph three, the wife of the testator was given a life estate in the testator's property, with remainder to Eulalia and Filemon. This disposition of the estate in remainder was qualified by the provision contained in paragraph four to the effect that, if either Eulalia or Filemon 'should die without issue, the whole estate shall go to the survivor or his or her issue.' *The rule of construction is well established that a provision of a will which provides, with respect to an estate in remainder, for a devise over to another if the remainder-man should die without issue, is to be taken as referring to the remainderman's death prior to the termination of the intervening estate, unless the language of the will show a different intent.* (Citing numerous authorities.) (Parenthesis supplied.)

"Nothing is to be found in the will under consideration to show that the testator intended paragraph four of his will to refer to the death of either of his foster children after the termination of the life estate of his wife." (44 S.W.2d at 910–911).

We find that the law in the majority of other jurisdictions conforms to the Texas law as announced in the Flores case above cited. In 3 Restatement, Property, § 269 (1940) the rule is stated as follows:

"When property is limited by an otherwise effective conveyance 'to B for life (or years), remainder to C and his heirs, *but if C dies without issue, then to D,*' or by other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the interest of D can become a present interest if, *but only if, C dies at or before the time of the termination of the interest of B* in accordance with the terms of the limitation and is unsurvived by issue at the time of his death." See also 96 C.J.S. Wills § 724 d(2), pp. 113–114.

We therefore hold when every provision of the will and codicil have been considered, the true testamentary intent reveals that the estate of Hannah Thompson vested absolute in the daughters of John E. Thompson upon his death. If the will when fairly construed left the question of vesting in doubt, the law favors vesting of the title at the earliest possible moment. Unless the language of the will showed·a different intent, the rule of construction is well established that a provision of a will which provides, with respect to an estate in remainder, for a devise over to another if the remainderman should die without issue, is to be taken as referring to the remainderman's death prior to the termination of the intervening estate. Flores v. De Garza, supra.

Judgment of the trial court is affirmed.

GREEN, C. J., not participating.