Roland SETLIFF, Leonard Setliff and Ray R. Setliff, Appellants,

v.

A. H. FIELDER et al., Appellees.

No. 350.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 14, 1967.

Lee Mahoney, of Mahoney, Shaffer & Hatch, Corpus Christi, for appellants.

J. M. Burnett, of Lewright, Dyer & Redford, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This suit involves the construction of one paragraph contained in the will of J. T. Gillett. Originally suit was filed by the three independent executors of the estate of J. T. Gillett, deceased, against one of the appellants, Roland Setliff, for possession of the Gillett farm and for crop rents for the year 1963–64. Roland Setliff answered and filed a cross-action against the executors in which he sought recovery for the crop rents already paid by him for the crop year 1962–63 and also for the same crop rents sought by the executors for the crop year 1963–64. Thereafter, Leonard Setliff, brother of appellant Roland Setliff, who had been farming the remaining portion of the Gillett farm, filed his petition in intervention seeking recovery of the crop rents paid by him for the crop years 1962–63 and 1963–64. Ray Setliff, father of Roland and Leonard Setliff, also intervened, claiming a portion of the crop rents paid by his two sons. The total crop rents involved for the two crop years amounts to $22,766.03. With the issues thus drawn the parties stipulated to the facts and trial was had before the court without the intervention of a jury. Judgment was entered favoring the executors. The three Setliffs have perfected their appeal to this Court.

The appellants claim that they are entitled to the crop rents for the years 1962–63 and 1963–64 by virtue of the fact that they were beneficiaries under the provisions of the J. T. Gillett will. The executors as appellees contend that the appellants were not beneficiaries under the will but were merely permissive tenants during the crop years involved. Appellants' three points are that (1) the trial court erred in holding that the appellants were not beneficiaries under the provisions of the last will and testament of J. T. Gillett, deceased, and were not therefore entitled to receive rents arising from the sale of crops during the crop years 1962–63 and 1963–64 for the reason that the terms and provisions of the will show as a matter of law that appellants were beneficiaries and entitled to such crop rents; or that (2) together with the facts presented, the will shows a clear intent of testator to devise the use of the surface of the Gillett farm to the appellants for the two years involved; and (3) the trial court erred in not entering judgment accordingly.

J. T. Gillett, prior to his death, owned a farm in Nueces County consisting of 975.04 acres. For many years the Setliffs farmed the land under a contract with Gillett. Originally appellant Ray Setliff, the father of Roland and Leonard Setliff, farmed and occupied all or a portion of the Gillett farm for a number of years prior to 1958 but did not farm any of the land after that date. Roland Setliff, one of Ray Setliff's sons, occupied and farmed a portion of the land for many years prior to 1962. The other son Leonard occupied and farmed the remaining portion of the farm for many years prior to 1962. All of the appellants occupied and farmed the Gillett land under a rental agreement whereby appellants Roland and Leonard Setliff, and prior to the year 1958, appellant Ray Setliff, were paying as rent under an agreement with J. T. Gillett deceased, one-third of the grain crop and one-fourth of the cotton crop harvested and in addition one-third of all government monies received under the government retirement program.

J. T. Gillett executed his last will and testament on April 17, 1963. Six days later, on April 23, 1963, Gillett died. The three independent executors named in his will qualified on May 13, 1963 and have served up to and including the time judgment was entered. At the time of Gillett's death appellants Roland and Leonard Setliff were farming and had growing crops on the land under the rental agreement above mentioned.

The provision of the will that we are called upon to construe is designated paragraph "Fifth" and reads as follows:

"FIFTH: It is my will and desire and I do hereby direct that my good friends,

Ray R. Setliff, Roland Setliff and Leonard Setliff be permitted to remain on my farm in Nueces County, Texas, until the same is sold by executors to make distribution hereunder."

The appellants argue throughout their brief that this provision of the will devised to them the occupancy and use of the surface which carried with it the rents and revenues produced therefrom.

Prior to the instigation of the suit, but after Gillett died, Roland voluntarily paid to the executors of the estate of J. T. Gillett the landlord portion of the crop rental for the crop year 1962–63. Appellant Leonard Setliff also voluntarily paid his landlord's portion of the rent to the executors of the estate for the crop years 1962–63 and 1963–64. Appellees contend that Roland and Leonard Setliff are bound by the construction which they originally gave to the will by voluntarily paying the crop rent. Appellees argue that the appellants paid this crop rent a long time after the will had been probated in strict accordance with their prior tenancy agreement and in accordance with the construction of the will as it is now construed by the executors and exactly contrary to the construction they now urge here. Appellees contend that where there is no ambiguity or doubtful meaning in a clause in a will under construction, the parties are bound by the construction given to it by their acts. The appellants answer this contention by stating that such voluntary rent payment was made under a mistake.

We must consider some of the most fundamental principles governing construction of wills. First, every provision of the will must be considered to ascertain the purpose and testamentary intent. Next, a will should ordinarily be construed with respect to circumstances existing at the time of its execution. In determining the testamentary intent, the physical facts that existed at the time that the testator made his will may be considered so that other clauses in the will may harmonize with such physical facts. Where we are required to interpret a provision in a will the court must consider the instrument from its four corners. See 61 Tex.Jur.2d, Wills, § 128, et seq.; Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943 (1958); Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903 (1954); Harrison v. Brown, 416 S.W.2d 613 (Tex.Civ.App.— Corpus Christi 1967, wr. ref., n. r. e.); Haile v. Holtzclaw, 414 S.W.2d 916 (Tex. Sup.1967). Following these guide lines we look at all of the testator's will.

In item "First", he directed that all his just debts be paid. Item "Second", he gave, devised and bequeathed unto his wife his home, the furnishings, furniture, savings account, bank stock, an undivided royalty interest in the Gillett farm, and provided that the royalty interest bequeathed should terminate upon the death of his wife and vest in the then owner of the land. In paragraph "Third", he gave, devised and bequeathed to sixteen certain named persons a specific sum of $5,000.00 and $10,000.00 to the Methodist Church at Lockhart, Texas. Item "Fourth" was his residuary clause, wherein he gave, devised and bequeathed the rest and residue of his estate to his wife, the Methodist Home at Waco and the Golden Age Home in Lockhart in certain undivided percentage interests. Thereafter, came Item "Fifth" concerning the Setliffs and the Sixth and final item was the appointment and direction of his independent executors and setting forth their duties and obligations. He therein authorized and empowered his executors to grant, sell and convey his entire estate except the items named in "Second" above (which he gave to his wife), at public or private sale for the purpose of paying his debts, expenses and in making a distribution of his estate.

At the time the testator made his will he recognized that the appellants had individually or collectively farmed all or portions of his farm in Nueces County. It was stipulated that appellants had always paid the rental in strict accordance with their rental agreement. Paragraph "Fifth"

recognizes these facts in precatory language, by directing his executors to permit the Setliffs "to remain on my farm in Nueces County" until the same is sold by them. The Supreme Court of Texas in Tinkle v. Sweeney, 97 Tex. 190, 77 S.W. 609 (1903) held that the word remain has been defined as "(1) To stay behind after others have withdrawn; * * * (2) To continue unchanged in place; * * * to stay * * *." We hold that the use of the words "be permitted to remain" clearly evidences an intent of the testator of giving the Setliffs the privilege of remaining on the farm under the previous contract agreements. To construe the words otherwise as devising a title or an estate in the land would do violence to the plain intentment of the testator when considered in the light of the entire will. The testator had disposed of his entire estate before he had reached item "Fifth" concerning the appellants. The testator knew how to "give, grant, devise and bequeath" and he did so to his wife, to sixteen individuals and to three eleemosynary institutions. If the testator had wanted to devise an estate to the appellants by his will, the will itself indicated that he knew how to do so by the clear language set forth therein. If the testator had wished to have changed the relationship of landlord and tenant that existed between the appellants and himself he could have indicated such a change, rather than by using the language of permitting the Setliffs "to remain" on his farm. We do not construe the testator's will as creating an estate in the appellants any greater than that which existed at the time the will was executed and the landlord-tenant relationship was in effect.

The will in no uncertain language authorized and empowered the executors to sell the farm and to make distribution in accordance with the terms of the will. The will provided that the Setliffs could remain on the farm until the same was sold. The will provided that the rest and residue of the estate was to be devised to his wife and two institutions. The will provided that the

royalty interest (of the farm) was granted for life to the testator's wife with the remainder to the new owner of the farm upon her death. We do not believe that the appellants were granted any estate greater than the privilege of remaining on the farm under the same terms and conditions which existed at the time the testator's will was drawn until the property was sold. Cruse v. Reinhard, Tex.Civ.App., 208 S.W.2d 598, wr. ref., n. r. e.

Appellants rely on the case of Ruble v. Ruble, Tex.Civ.App., 264 S.W. 1018, n. w. h. This case is distinguishable upon the facts. The Setliffs were not related to the testator and here they had been actually paying rents for a number of years to the testator. They had no right to the revenue from the farm by reason it was their homestead, inheritance or by any other theory. By paying the crop rent long after the will had been admitted to probate (to the named executors) we believe the appellants have evidenced a like construction of the will as we have given it herein. Appellants' points are overruled.

Judgment of the trial court is affirmed.

## Concurring Opinion

SHARPE, Justice.

I concur in affirmance of the judgment. In my view, certain phases of the case merit further analysis, consideration and discussion. Although I am in accord with the result, I do not agree with some of the statements and conclusions in the majority opinion and will, therefore, state separately my reasons for affirmance.

The material facts are undisputed. They were established by a written stipulation and to some extent by agreement in the pleadings. Mr. J. T. Gillett died on April 23, 1963 after having six days prior thereto executed a will which created an independent administration. During his lifetime Mr. Gillett owned a farm in Nueces County, Texas, which over a long period of time had

been farmed by one or more of the Setliffs, appellants here. At the time of Mr. Gillett's death, Roland and Leonard Setliff were the tenants on separate portions of the farm. Their father, Ray Setliff, had been a tenant prior to 1938, but had not farmed the land since that year. The owner's or landlord's rent which the tenants agreed to pay Mr. Gillett was one-third on grain, one-fourth on cotton, and one-third of Government payments under the Acreage Retirement Program. The controversy here involves only crops which matured or payments which accrued after Mr. Gillett's death. All amounts owing to him prior to the crop year 1962–1963 had been paid. The questions presented relate only to the owner's or landlord's rent payable by the tenant. The terminology used by the parties in referring to the landlord's rent varies somewhat, but the term most frequently used is "crop rents".

Roland Setliff paid $4,942.07 to the executors of Mr. Gillett's estate as the landlord's rent for the crop year 1962–1963. He did not pay the landlord's rent for the crop year 1963–1964 amounting to $8,592.75 on grain and cotton and $830.34 on the Acreage Retirement Program. However, after the executors sued him, Roland Setliff tendered such amounts into the registry subject to the determination of the court. Leonard Setliff paid to the executors the landlord's rents for the crop year 1962–1963 in the amount of $3,503.02, and for the crop year 1963–1964 the amount of $4,897.85. The farm was sold by the executors on August 1, 1964. None of the Setliffs conducted farming operation thereon subsequent to the crop year 1963–1964.

The provision of Mr. Gillett's will with which we are most directly concerned is the fifth paragraph thereof which reads as follows:

"FIFTH: It is my will and desire and I do hereby direct that my good friends, Ray R. Setliff, Roland Setliff and Leonard Setliff be permitted to remain on my farm in Nueces County, Texas, un-

til the same is sold by executors to make distribution hereunder."

This suit was instituted by the executors on October 20, 1964 against Roland Setliff as the sole defendant. They sought recovery of the landlord's rent which had not been paid for the crop year 1963–1964, for possession of that portion of the farm occupied by Roland Setliff, and for injunctive relief. The last-mentioned issue passed out of the case.

On November 13, 1964 Roland Setliff filed an answer to the executors' original petition and in addition filed a cross-action complaining not only of the executors who were original plaintiffs, but also against all of the twenty beneficiaries named in the second, third and fourth paragraphs of Mr. Gillet's will as cross-defendants. Among other things the cross-action alleged the following:

"That Cross-Plaintiff is entitled to recover of and from Cross-Defendants the sum of Four Thousand Nine Hundred Forty Two Dollars and 07/100 ($4,942.-07), the sum paid by mistake to Cross-Defendants, A. H. Fielder, Newton W. Wilson, Jr., and W. P. Clark, Independent Executors, from the sale of crops produced during the crop year 1962–1963, and is entitled to retain all of the rents and revenues produced, and which were sold, as a result of the 1963–1964 crop year. In this connection, Cross-Plaintiff would show that he was, and is, entitled to all of the rents and revenues received from the sale of Crops produced on said land during the crop years 1962–1963 and 1963–1964, by virtue of the terms and provisions of the Last Will and Testament of J. T. Gillett, and in particular under the provisions of Paragraph FIFTH, said Will and Testament having devised to Cross-Plaintiff an estate in said lands for a term, to-wit: until said land was sold by said Executors in the year 1964 and after all of the crops in said land had been harvested and sold. That Cross-Plaintiff as owner of the es-

tate for a term of years, to-wit: from the date of the death of J. T. Gillett until said lands were sold, was entitled to full possession and use of said lands and to the rent and revenues produced therefrom, as aforesaid."

The cross-action of Roland Setliff further alleged that a dispute existed between the parties over the interpretation and construction of the will of J. T. Gillett, and there was a need for a judicial construction of the will and paragraph fifth thereof. The prayer of the cross-action was in substance for a judicial construction of the will in accordance with the contentions made by Roland Setliff, and that he recover all amounts paid by him on account of crops produced by him during the crop year 1962–1963, and that he be allowed to retain all crop rents and revenues for the crop year 1963–1964.

On June 8, 1965 Leonard Setliff filed a petition in intervention complaining of all parties named as cross-defendants by Roland Setliff, and also complaining of Roland Setliff. Among other things, Leonard prayed for a construction of the will. Although his petition in intervention made allegations of fact similar to those contained in the cross-action of Roland, there was at least one important difference concerning the theory of recovery. Paragraph III of Leonard's petition in intervention read as follows:

"That this Intervenor, under the terms of said Will, is entitled to his one-third (⅓) share of all of the rents and revenues heretofore paid by mistake by this Intervenor as set out in Paragraph I of the Pleading. That this Intervenor, under the terms of said Will, is further entitled to his one-third (⅓) share of all the rents and revenues heretofore paid by mistake by Defendant and Cross-Plaintiff, Roland Setliff, to Plaintiffs and Cross-Defendants, A. H. Fielder, Newton W. Wilson, Jr., and W. P. Clark, Independent Executors, for the crop year

1962–1963, for that portion of said farm occupied by the said Roland Setliff, such sum of money being set out in Defendant and Cross-Plaintiff, Roland Setliff's, 'Cross-Action' on file herein. That this Intervenor, under the terms of said Will is further entitled to his one-third (⅓) share of all the rents and revenues from said farm in the possession and control of the said Roland Setliff for the crop year 1963–1964."

Paragraph IV of the petition in intervention read in part as follows:

"That this Intervenor, Ray B. Setliff and Roland Setliff, are each under the terms of said Will and in particular under the terms of Paragraph 'FIFTH', co-owners of the estate for years in said farm, to-wit: 'until said land was sold by said Executors'."

Paragraph V of the petition in intervention read in part as follows:

" * * * That all such rents and revenues so held and claimed by said Plaintiffs and Cross-Defendants A. H. Fielder, Newton W. Wilson, Jr., and W. P. Clark belonged to and are owned by this Intervenor, Roland Setliff and Ray R. Setliff in equal shares."

The prayer of the petition in intervention read in part as follows:

"WHEREFORE, PREMISES CONSIDERED, this Intervenor prays that he be allowed, by means of this petition to intervene in said suit, and that on final hearing hereof to have Judgment of and from said Plaintiffs and Cross-Defendants for one-third (⅓) of all monies paid by this Intervenor to said Plaintiffs and Cross-Defendants which one-third (⅓) is the amount of Two Thousand Eight Hundred Dollars and 29/100 ($2,800.29); for Judgment of and from said Plaintiffs and Cross-Defendants for one-third of all monies paid by the said Roland Setliff to said Plaintiffs and Cross-Defend-

ants, which one-third (⅓) is the amount of One Thousand Six Hundred Forty Seven Dollars and 32/100 ($1,647.32); for Judgment of and from said Roland Setliff for one-third ((½) *sic.* of all crop rents and revenues produced on said land farmed by the said Roland Setliff for the crop year 1963–1964; * * *"

On June 8, 1965, Ray Setliff filed a petition in intervention complaining of the said cross-defendants and also of Roland Setliff. Ray's theory of recovery was substantially the same as that relied on by Leonard in his petition in intervention, and in effect was that he should recover one-third of the amounts paid by Roland and Leonard as crop rents or retained by Roland; that is, the amounts which would ordinarily have been the landlord's rent under the agreements in effect prior to the will.

On October 20, 1966, Roland Setliff filed an Amended Cross-Action in which he conformed his theory of recovery in general terms to that relied upon by Leonard and Ray. In part he alleged the following:

"Under the terms and provisions of the Will of J. T. Gillett, and in particular Paragraph FIFTH thereof, Cross-Plaintiff and his father, Ray R. Setliff, and his brother, Leonard Setliff, are beneficiaries, and as such were and are entitled to all of the proceeds derived from crops produced and sold on the J. T. Gillett farm during the crop years 1962–1963 and 1963–1964, share and share alike."

It thus appears from the final state of the Setliffs' pleadings, in the light of the stipulated facts, that they recognized the tenancy contracts; and did not contend that no rents were owed. Instead, it appears that their position was that under the will the landlord's rent was owed to themselves in equal shares. Otherwise stated, the ultimate position of the Setliffs in the trial court was that under the will they were entitled to recover or retain in equal shares the amount of the landlord's rents for the two crop years in question.

The pleadings of appellees (the executors of the estate and the beneficiaries under the will who were named as cross-defendants) in the lower court in the light of the stipulated facts, was in substance that the will of J. T. Gillett and the fifth paragraph thereof merely extended to the Setliffs the privilege of continuing their farming operations under and by virtue of the previous tenancy agreements between them and Mr. Gillett and that the Setliffs were still obligated to pay the landlord's rent for the use of the farm.

The trial court rendered its judgment in the context hereinabove stated. The effect of the judgment was to allow the executors to retain the amounts theretofore paid by Roland and Leonard Setliff and to recover the remaining amounts not theretofore paid as crop rentals but which had been tendered into court; and to deny the Setliffs any right to or recovery of such crop rents or landlord's rents under the construction of the will contended for by them.

In support of the trial court judgment, appellees urge three counterpoints in this court reading as follows:

### "FIRST COUNTERPOINT

"The Trial Court was correct in holding, as a matter of fact and as a matter of law, that Appellants were not entitled to receive the landlord's portion of the rents arising from farming operations during the crop years 1962–1963 and 1963–1964.

### "SECOND COUNTERPOINT

"The Trial Court was correct in holding that Appellants were not entitled to the landlord's portion of the crop rents involved herein under the provisions of the Will and the facts presented, since the terms and provisions of the Will, in the light of the facts, establish that the clear intent of the Testator was to permit Appellants to continue to farm the land under the same arrangements as had existed prior to and on the date of the Will.

## "THIRD COUNTERPOINT

"The Trial Court was correct in entering Judgment for Appellees and in not entering Judgment for Appellants for the landlord's crop rents for the years 1962–1963 and 1963–1964."

In my view, these counterpoints are well taken and should be sustained.

Appellants' first two points assume that the trial court found or held that they were not beneficiaries under the will of J. T. Gillett and denied them a recovery for that reason. In my view, there is nothing in the record to support that assumption. It is apparent to me that what the trial court held was that appellants were not beneficiaries under the will to the extent claimed by them. Under appellants' proposed construction of the will they would have been entitled to retain not only the tenant's share of the crops and Government payments but the landlord's rent as well. While the trial judge rejected this contention, this does not mean that he found or held that appellants were not beneficiaries in any way. It is clear to me that the appellants were beneficiaries under the will to a limited extent and that the trial court, consistent with its judgment, could have and did so conclude. In my view, the benefit conferred upon appellants by the will was limited to the right to remain on the Gillett farm as tenants for a period of time after Mr. Gillett's death until the property was sold. In other words, appellants were entitled under the will to continue their tenancy on the farm for a longer period of time than they would have without it. The testator undoubtedly intended that appellants be not removed as tenants until the farm was sold, provided they desired to remain in that capacity. The benefit to appellants under the will was that the duration of their tenancy was extended by it for an additional period of time beyond that under the existing agreement.

In support of their contentions here appellants rely heavily on the case of Ruble v. Ruble, 264 S.W. 1018 (Tex.Civ.App., Waco, 1924, n. w. h.). That case involved a controversy between Mrs. J. G. Ruble, the second wife and surviving widow of the testator, on the one hand, and other devisees and legatees who were children and grandchildren of the testator by his first marriage, on the other hand. The question presented was whether the widow or the other beneficiaries under the will were entitled to proceeds of crops harvested within six months of the testator's death. The will contained the following provision:

"It is my will and desire that my wife, Rosa Lee Ruble, shall have six months after my death to vacate the premises of our homestead, and no action shall be taken against her during the first six months in order to force or coerce her to vacate."

The trial court held against the widow and the Court of Civil Appeals reversed and rendered judgment in her favor, holding in part as follows:

"We think the testator used the term 'homestead' in the paragraph of his will before us for construction in the same sense in which he used said term in the preceding paragraph above referred to. Notwithstanding such tract of land was community property of his former marriage, he seems to have held and treated it as his separate property during his lifetime, and to have disposed of it as such by said will at his death. Having treated said entire tract as his homestead in said will, the testator saw fit to permit his surviving wife to continue to occupy same for a period of six months after his death, and to limit her right to such occupancy to such period of time. Until she was required by the terms of said will, under which she elected to take, or, by necessary implication from the provisions contained therein, to vacate said premises and and to surrender the possession thereof she held and occupied the same as her homestead. The right of the surviving wife to use and occupy the homestead includes the right to receive and enjoy the rents and revenues thereof, notwithstand-

ing such homestead was the separate property of the husband and the legal title thereto immediately upon his death passed by descent or devise to others. McAllister v. Godbold (Tex.Civ.App.) 29 S.W. 417, 418, and authorities there cited."

It is apparent that in *Ruble* the right of the widow to receive the landlord's share of the crops was based upon her homestead rights given to her by law and the recognition of same by the will (under which she had elected to take) for a period of six months. In that case there was no contention by tenants that they were entitled to retain the landlord's rents. In my view, *Ruble* does not furnish support for appellants' position here.

In support of their contentions here appellees cite the case of Cruse v. Reinhard, 208 S.W.2d 598 (Tex.Civ.App., Beaumont, 1948, wr. ref. n. r. e.). One of the several points is that case involved codicil. Three reading in part as follows:

"It is my will and wish that my daughter Ethel continue to live in my home till and unless she wishes to change her residence, * * *."

The daughter, Mrs. Ethel Mouton, occupied a portion of the home. Other portions of it were rented to third parties who paid rent to the Estate. Mrs. Mouton contended that under said codicil she was entitled to the rentals paid by the third parties. The trial court agreed and vested Mrs. Mouton with an interest in the property which seemed to have all of the incidents of a life estate upon conditional limitation but without power of alienation. The Court of Civil Appeals disagreed with that view and held that Codicil-Three did not bequeath to Mrs. Ethel Mouton the rentals from the testatrix' home. The Court pointed out that it was the right to *live* in the home, not the home itself which was devised. The Court in part said,

"The limitation upon Mrs. Mouton's interest—automatic termination upon Mrs. Mouton's abandonment of the property, for which Codicil-Three clearly provides—prevents alienation of this interest.

Lack of power to alienate is consistent with and indicates a mere right of occupancy, but is inconsistent with a life estate, which may ordinarily be conveyed."

The Court further held that Mrs. Mouton's right of occupancy was non-transferable because it automatically terminates when she abandons the property. The Court of Civil Appeals further pointed out that the failure of the testatrix to mention income in Codicil-Three was significant, and that if she had intended to except the rentals earned by her home from the general bequest made in another provision of the will she would have expressly so provided in Codicil-Three. Cruse v. Reinhard is by analogy favorable to appellees' position here. Appellants herein could not sell their right to remain on the farm, and it appears that such right to remain would terminate upon abandonment or when the property should be sold. Paragraph Five of the will herein does not mention the subject of the landlord's rent from crops or Government payments. Such omission is significant in view of the manner in which the testator's property was devised and bequeathed in other paragraphs of the will, and shows that the testator did not intend that appellants' right "to remain" carried with it the additional right to the landlord's rent.

Appellees also cite the case of Tinkle v. Sweeney, 97 Tex. 190, 77 S.W. 609 (1903). In that case the court was concerned with the term "to enter and remain." The court particularly considered the dictionary definitions of the word "remain" along with its synonyms, and quoted from an opinion of the Supreme Court of Wisconsin, as follows: "The word 'remain' presupposes and implies something that exists or continues after some other time or event." Baldwin v. Ely, 66 Wis. 171, 198, 28 N.W. 392, 404. *Tinkle* is authority for appellees' position here that Mr. Gillett's will simply provided for a continuation of what had preceded it. In my view the correct meaning was and is that the tenancy of appellants would be continued for a period of time beyond that for which it might have otherwise extended, but

with the obligation on the part of the tenants to pay the landlord's rents.

In this case it is shown that the executors of Mr. Gillett's estate permitted Roland and Leonard Setliff, two of the appellants who were the tenants at the time of Mr. Gillett's death, to remain on the farm for the remainder of the crop year during which Mr. Gillett died and for an additional crop year until the property was sold. In my view, the only benefit flowing to Ray Setliff under the will was that he could have farmed the land along with his two sons as tenants if he so desired; but he did not do so. Even if he had, the tenants' portion of the crops or Government payments would not have been enlarged. There could have been an accounting and settlement between the Setliffs as to their respective interests in the tenants' portion, but appellees would not be concerned with the same.

In my view, the trial court rendered the proper judgment and for the reasons stated herein I have voted to affirm it.