**Deborah Isaac COOPER,**

v.

**UNITED STATES of America,**

v.

**Roland T. Glass, et al.**

**No. 9:02 CV 321.**

United States District Court,
E.D. Texas,
Lufkin Division.

May 7, 2004.

Judith K. Guthrie, United States Magistrate, Tyler, TX, pro se.

Ben A. Baring, Jr., Paul J. McConnell, III, De Lange, Hudspeth, McConnell & Tibbets LLP, Houston, TX, for Plaintiff and Counter–Defendant.

Manuel P. Lena, Jr., U.S. Department of Justice, Dallas, TX, for Defendant, Third Party–Plaintiff and Counter–Claimant.

Roland T. Glass, Livingston, TX, pro se.

Krystal Lea McQueen Gay, Livingston, TX, pro se.

Alvin T. McQueen, N Zulch, TX, pro se.

Wilma McQueen, Livingston, TX, pro se.

## MEMORANDUM AND ORDER

HEARTFIELD, Chief Judge.

Before the Court is the Plaintiff's Amended Motion for Summary Judgment (doc. # 66) and the United States' Cross Motion for Partial Summary Judgment (doc. # 73). After careful consideration of the motions and the applicable law, the Court is ready to make its ruling.

## BACKGROUND

Plaintiff brought this lawsuit against the United States to quash two federal tax liens and to quiet title to a 5.7 acre parcel of land in the A. Viesca Seven League Grant, # 77, in Polk County, Texas. The United States filed a counterclaim against

Plaintiff and brought a Third Party Complaint against Roland T. Glass, Krystal Lea McQueen Gay, Alvin T. McQueen, and Wilma McQueen.

The relevant history of the ownership of property, for purposes of the motions under consideration is as follows:

On April 28, 1977 Alvy T. McQueen conveyed the property to Wilma L. McQueen, wife of Alvy T. McQueen, as her sole and separate property and estate;

On July 17, 1986, Alvy T. McQueen and Wilma L. McQueen designated this 5.7 acres parcel as their homestead;

On June 30, 1997, Wilma L. McQueen conveyed the property to Roland Thomas McQueen Glass, her grandson. The instrument contained the following language: "Be it also known that Wilma McQueen is to be able to reside on this property in the present home until the day she dies."

On April 13, 1998 and April 20, 1998, Wilma McQueen was assessed federal excise taxes related to her involvement in the Livingston Oil Company for the four quarters of 1987 and the first three quarters of 1988. On July 17, 1998, the IRS filed a notice of federal tax lien in Polk County, Texas in the real property records relating to Wilma McQueen.

On July 30, 2001, Deborah Isaac Cooper purchased the property from Roland Glass, Wilma Lea McQueen and Alvy T. McQueen by General Warranty Deed with Vendor's Lien Retained. The promissory note involved was for $140,000.00. The grant was without reservations and the exceptions listed were any easements, valid gas and mineral rights, and ad valorem taxes for the year 2001. In connection with this sale, Wilma McQueen signed an affidavit of marital status which stated that she was the owner of a life estate in the 5.7 acre parcel.

Ms. Cooper paid $170,000.00 for the property and Roland Glass received a net of $130,250.00 which he used to buy a house in North Zulch, Texas. His grandparents, Wilma and Alvy McQueen, moved into the house Roland Glass purchased in North Zulch, Texas.

The United States seeks to foreclose its tax lien upon the property while Plaintiff seeks to quiet title to the property and removed the federal tax liens. Both parties bring motions for summary judgment.

## LEGAL STANDARD

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999). The standard for summary judgment mirrors that for judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2102, 147 L.Ed.2d 105 (2000).

## DISCUSSION

The cross-motions for summary judgment raise an issue of law as to the legal effect of the deed from Wilma McQueen to her grandson, Roland T. Glass. The United States takes the position that the interest retained by Wilma McQueen signified

by the language, "[b]e it also known that Wilma McQueen is to be able to reside on this property in the present home until the day she dies," created a life estate in Wilma McQueen. The United States fails, however, to cite any law, from Texas or other jurisdictions, to support its position. It merely recites the fact that the title insurance company treated Wilma McQueen's interest as a life estate and the fact that both Wilma and Alvy McQueen were parties to the General Warranty Deed with Vendor's Lien Retained when the property was transferred to Plaintiff by Roland Glass on July 30, 2001.

■ The threshold question in any case involving the federal government's assertion of its tax lien is whether and to what extent the taxpayer had "property" within the meaning of the federal tax lien statute. Section 6321 of the Internal Revenue Code affords the government a lien for delinquent taxes upon "all property and rights to property" belonging to the taxpayer. The Supreme Court has held that state law determines whether the taxpayer has property or the right to property to which the tax lien may attach. *See United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). In *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135, the Court said that the federal tax lien provision "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." The case relied on as authority for that statement, *Fidelity & Deposit Co. v. New York City Housing Authority,* 241 F.2d 142, 144 (2d Cir.1957), clearly states that "the statute was fashioned to require the courts to determine for federal purposes whether those state–created interests are 'property' or 'rights to property.'"

All of this indicates that a federal court looks to state law to determine whether an interest exists, and then determines under a federal standard whether such an interest amounts to a "property" interest.

■ We thus look to the law of the State of Texas to determine what interest was created by the words of the deed cited above. The primary duty of courts called upon to construe deeds is to ascertain the intent of the parties from all of the language contained in the particular deed by the fundamental rule of construction known as the "four corners" rule. The actual intent of the parties as expressed in the instrument, in its entirety, prevails over arbitrary rules of construction. *Neel v. Killam Oil Co., Ltd.,* 88 S.W.3d 334 (Tex.App.—San Antonio 2002).

■ The process of deed construction has been described as three-tiered: (1) the court attempts to ascertain the grantor's intent by examining the plain language of the deed; (2) the court then applies applicable rules of construction to the deed; and (3) the court considers extrinsic evidence to aid interpretation. *Cherokee Water Co. v. Freeman,* 33 S.W.3d 349 (Tex. App.—Texarkana, 2000), citing Laura H. Burney, The Regrettable Rebirth of the Two Grant Doctrine in Texas Deed Construction, 34 S. TEX. L. REV. 73, 77–78 (1993). The third tier, the admission of extrinsic evidence, is not reached unless the intent of the parties is unclear because the deed is ambiguous. *Cherokee Water,* 33 S.W.3d at 353, citing *Stauffer v. Henderson,* 801 S.W.2d 858, 863 (Tex. 1990). The question of ambiguity in a deed, as with other written instruments, is a question of law. *Cherokee Water,* 33 S.W.3d at 353. A document or deed that can be given a definite or certain legal meaning from the words used is not ambiguous. *Stewart Title Guaranty Co. v. Aiello,* 941 S.W.2d 68, 74 (Tex.1997); *Cher-*

*okee Water*, 33 S.W.3d at 353. If the deed language is susceptible to a single meaning, the court will be confined to the writing. *Cherokee Water*, 33 S.W.3d at 353. If the language may be interpreted in different ways, rules of construction may be used. *Id.* An instrument is ambiguous only when the application of these rules leaves it unclear which of two reasonable meanings is the correct one. *Id.*

■ The language of the right reserved by Wilma McQueen in her deed of the property to Roland T. Glass, i.e., "[b]e it also known that Wilma McQueen is to be able to reside on this property in the present home until the day she dies," gives Wilma McQueen a right to "reside" on the property "in the present home until the day she dies." The words in question are unambiguous. Texas cases have held that similar language does not create a life estate. In *Cruse v. Reinhard*, 208 S.W.2d 598 (Tex.Civ.App.Beaumont 1948), writ refused n.r.e., the grant of permission to "live" on the property did not create a life estate but a mere right of occupancy. *See also Setliff v. Fielder*, 422 S.W.2d 527, 530 (Tex.Civ.App.—Corpus Christi 1967). In *Ahrens v. Lowther*, 223 S.W. 235 (Tex.Civ. App.1920), error refused, the court held that language stating the grantor was "to continue using said lot as she has always done, so long as she may live," did not, as a matter of law, constitute a reservation of a life estate. A grantor may reserve the right to occupy a house on the premises conveyed. *Sisk v. Randon*, 33 S.W.2d 1082 (Tex.Civ.App.Galveston 1930), writ granted, (Mar. 4, 1931) and aff'd, 123 Tex. 326, 70 S.W.2d 689; *Setliff v. Fielder*, 422 S.W.2d 527 (Tex.Civ.App.—Corpus Christi 1967). In both *Sisk* and *Setliff*, the language creating the right to occupy the house on the premises what not held to create a life estate. It is apparent that under Texas law, the language used in the deed in question created in Wilma McQueen a right of occupancy and did not create a life estate.

■ When a grantor conveys the fee, he or she may reserve specified rights for himself or herself or his or her heirs and assigns. *Hansen v. Bacher*, 299 S.W. 225 (Tex.Com.App.1927). An estate in the land less than the fee simple as well as an interest in land not amounting to an estate known to the law may be reserved. *Woodmen of the World, Camp No. 1772 v. Goodman*, 193 S.W.2d 739 (Tex.Civ.App.—Dallas 1945). However, if the reservation does not reserve to the grantor a definite estate in the land, the deed may be construed as a grant of the fee simple, subject to a mere contractual right. *Emerson v. Pate*, 165 S.W. 469 (Tex.Crim.App.1914).

■ It appears that a right of occupancy, under Texas law, is not a definite estate in the land. The rationale supporting this conclusion appears to be that the language creating a right of occupancy only does not create any right or privilege that is transferable. It would appear that Congress meant the tax lien to apply only to interests which have or foreseeably will have value to the taxpayer, for only such interests could serve to satisfy the tax debt. Transferability is the primary value-imparting characteristic of most property interests. Federal definitions of property have generally emphasized the elements of transferability and leviability by creditors. See *Note, Property Subject to the Federal Tax Lien*, 77 HARV. L.REV. 1485, 1487 (1964). A right of occupancy is a personal right which is not transferable. Furthermore, the United States has provided no authority showing that under federal law a right of occupancy is an interest which amounts to "property" for tax lien purposes.

Having found that Wilma McQueen, in her deed to Roland T. Glass, reserved only

738

a personal right of occupancy, and therefore transferred fee simple interest in the land to Roland T. Glass, we look to the legal effect of the recording of the tax liens against Wilma McQueen and of the transfer from Roland T. Glass to the Plaintiff, Deborah Cooper.

It is undisputed that the federal tax liens were filed against Wilma McQueen and registered in the property records of Polk County, Texas in April, 1998 after the land was deeded by Wilma McQueen to Roland Glass on June 30, 1997. Thus the transfer to Roland T. Glass was free of any prospective tax lien.

It is also apparently undisputed that Plaintiff, Deborah Isaac Cooper, is a bone fide purchaser of the property from Roland Glass. The United States in its Opposition to Plaintiff's Motion for Summary Judgment and its Cross Motion for Summary Judgment asserts that there are only two questions presented: 1. Whether Wilma McQueen owned a property interest in the subject property and 2. Whether the United States has valid tax assessments against Wilma McQueen. The United States provides no argument, evidence or authority which would challenge Ms. Cooper's affidavit and other evidence which establishes that she was a bona fide purchaser for value who had no notice of the liens and purchased the property in good faith for valuable consideration. *See City of Richland Hills v. Bertelsen,* 724 S.W.2d 428, 429 (Tex.App.—Fort Worth 1987) no writ.

For the above and foregoing reasons, the Court finds in answer to the questions of the United States, that Wilma McQueen did not own a property interest in the subject property at the time of its transfer to Plaintiff and that Plaintiff is entitled to summary judgment on the question of whether she took the property free and clear of any tax lien later levied by the United States against Wilma McQueen.

The Court further find that the summary judgment evidence submitted by the United States is insufficient to determine the question of whether or not it has a valid tax lien against Wilma McQueen. The United States is not entitled to summary judgment on that issue.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Amended Motion for Summary Judgment (doc. # 66) is hereby GRANTED.

IT IS ORDERED that the Cross Motion for Partial Summary Judgment of the United States (doc. # 73) is DENIED.