CHEROKEE WATER COMPANY,
Appellant,

v.

William Odie FREEMAN,
et al., Appellees.

No. 06–99–00160–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 5, 2000.

Decided Oct. 20, 2000.

Rehearing Overruled Dec. 5, 2000.

S. Calvin Capshaw, Nancy M. Fuller, H.P. Smead, Jr., Tracy Graves Wolf, Brown, McCarroll & Oaks Hartline, Longview, Ron Adkison, Wellborn, Houston, Adkison, Mann, Henderson, for appellant.

Jon K. Hudgens, Kenneth L. Ross, Ross-Hudgens & Graves, Longview, for appellee.

Before CORNELIUS, C.J., GRANT and HILL, JJ., (JOHN HILL, Sitting by Assignment).

## OPINION

WILLIAM J. CORNELIUS, Chief Justice.

Cherokee Water Company appeals from a declaratory judgment construing three deeds favorable to the claims of the children of J.A. Freeman, the children of W.R. Freeman, and the heirs of James C. Freeman (the Freemans). In four points of error Cherokee contends that the trial court erred (1) in finding the deeds ambiguous, thereby misinterpreting the deeds of W.R. and J.A. Freeman, and (2) in concluding that subsequent acts and statements made by representatives of Cherokee indicated the intent of the grantors.

The deed provisions to be construed are those in the respective deeds granting or reserving to the Freemans and their children and/or heirs the rights to fish, boat, and otherwise use Cherokee Lake and the Freemans' adjacent lots for recreational purposes. The trial court found all three deeds ambiguous and, based on evidence of the parties' intention, declared that the Freemans currently are entitled to exercise those rights. We conclude that the trial court erred in finding that the deeds from J.A. and Lonie Freeman and from W.R. and Dessie Freeman are ambiguous, and further erred in construing their provisions. We conclude that the trial court correctly construed the deed from J.C. and Mattie Freeman. Therefore, we reform the judgment in part, and as reformed, affirm the judgment.

In January of 1948, Cherokee, in an effort to acquire land for public use, instituted condemnation proceedings against J.A. and Lonie Freeman, W.R. and Dessie Freeman, and James C. and Mattie Freeman, respectively. A few months later, each group of the Freemans conveyed a portion of their land, by general warranty

deed, to Cherokee in full settlement of the controversy. W.R. Freeman and his wife Dessie executed their deed on May 24, 1948. J.A. Freeman and his wife Lonie executed their deed on May 25, 1948. James C. Freeman and his wife Mattie executed their deed on March 25, 1949. The two 1948 deeds contain substantially similar granting language, the first of which in pertinent part states:

*The Grantor and his children living or visiting with him* are hereby given by the Grantee a right to fish on the land above described, which is to be included in a part of Cherokee Lake; such right including with it the right to anchor a boat on the shore line, with access to said boat. This right to fish shall be governed by the same rules and regulations as may be imposed upon those who are allowed to fish in said Lake as to the time of taking fish, the kind and size of fish to be taken from said Lake. This right is personal and cannot be sold or assigned.

(Emphasis added.) The second deed, executed by J.A. and Lonie Freeman, similarly states:

The Grantee hereby agrees that, when said Lake is completed, *the Grantors together with their children living or visiting with them* (except W. R., J.C. and Noah Freeman) are hereby given the right to go upon the waters covering the above land and fish therein, subject, however, to such rules and regulations as may be imposed from time to time upon those who are authorized to fish in said Lake; such rules governing the number[,] kind, and size of fish taken, as well as the time when such fish can be caught. The rights herein granted to fish are personal and are not, subject to sale or assignment. To enter the water covering the above land, the Grantors are hereby given a right of way over and a right to use, for the purpose of anchor-

ing a boat, Lot Number 8 in Block SQ of Lake Cherokee sub-division. The right of Grantors to use said lot is subject to the rules as may be established by Lake Cherokee, governing sanitary conditions on said Lot.

(Emphasis added.) The third deed, executed in March of 1949 by James C. and Mattie Freeman, states in pertinent part:

[T]he Grantors are hereby given the right to select one of the above lots and to make such selection within ten (10) days after they have been notified that said lots have been located and staked on the ground. *The Grantors and their Heirs shall have the right to use said lot for and during the natural life of either of them.* Said lot shall not be used for commercial purposes but shall be used for a camp house, picnic ground, and to enter Lake Cherokee for the purposes of fishing as herein granted.

*The Grantors and their Heirs are hereby granted the right to go upon Lake Cherokee for the purpose of fishing and recreation,* but such rights shall be governed by the same rules and regulations as the Grantee may impose upon all persons that it gives permission to enter said Lake for recreational and fishing privileges.

(Emphasis added.)

Following the deaths of all the original grantors, a dispute arose between Cherokee and the children of the grantors concerning whether the various fishing and recreational rights mentioned in the deeds survived the grantors' deaths. To resolve the dispute, Cherokee, in 1996, filed suit seeking a declaratory judgment to construe the provision in J.A. and Lonie Freeman's deed. Cherokee subsequently filed two additional suits, one for each of the other two deeds, and stipulated that all the cases would be tried together in the District Court of Rusk County, Texas.[1] In response, the Freemans filed various coun-

---

1. Cherokee's first lawsuit was filed in Gregg County, but was subsequently transferred to Rusk County.

terclaims against Cherokee, all of which were severed from the deed construction issues and disposed of by the summary judgment. The Freemans appealed the summary judgment to this Court, and we affirmed the trial court's decision.[2] The deed construction issues eventually were heard, and the trial court found: (1) that the two 1948 deeds were ambiguous as a matter of law, and, based on extrinsic evidence, the grantors' intent was that the various rights survive their death and pass to their children to enjoy for their lives; (2) that the grantors of the 1949 deed intended for the rights to survive their death and pass to their heirs based on the use of the word *heirs;* and (3) that although Cherokee was the grantee in all deeds, Cherokee was the *grantor* of the fishing and recreational rights at issue.

In its first and second points of error, Cherokee contends that the trial court erred by misapplying the rules of deed construction in finding the two 1948 deeds ambiguous, and also erred by admitting extrinsic evidence to determine the grantors' intent. A court's primary goal when construing a deed is to ascertain the true intention of the parties as expressed within the "four corners" of the instrument. *See Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991); *Garza v. Maddux,* 988 S.W.2d 280, 287 (Tex.App.—Corpus Christi 1999, pet. denied). The four corners rule requires the court to ascertain the intent of the parties solely from all of the language in the deed. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966 S.W.2d 451, 465 (Tex.1998). The intent that governs, however, is not the intent that the parties meant but failed to express, but the intent that is expressed. *Prairie Producing Co. v. Schlachter,* 786 S.W.2d 409, 412 (Tex.App.—Texarkana 1990, writ denied); *Harlan v. Vetter,* 732 S.W.2d 390, 392 (Tex.App.—Eastland 1987, writ ref'd n.r.e.). A commentator has de-

scribed the process of deed interpretation as three tiered: (1) the court attempts to ascertain the grantor's intent by examining the plain language of the deed; (2) the court then applies applicable rules of construction to the deed; (3) the court then considers extrinsic evidence to aid interpretation. Laura H. Burney, *The Regrettable Rebirth of the Two Grant Doctrine in Texas Deed Construction,* 34 S.Tex.L.Rev. 73, 77–78 (1993). The third tier, the admission of extrinsic evidence, is not reached unless the intent of the parties is unclear because the deed is ambiguous. *Stauffer v. Henderson,* 801 S.W.2d 858, 863 (Tex.1990); *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982). The question of ambiguity in an instrument is a question of law. *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex. 1987) (relating to contract construction). A document or deed that can be given a definite or certain legal meaning from the words used is not ambiguous. *See Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 74 (Tex.1997); *see also Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If the deed language is susceptible to a single meaning, the court will be confined to the writing. *Watkins v. Petro–Search, Inc.,* 689 F.2d 537, 538 (5th Cir.1982). If the language may be interpreted in different ways, rules of construction may be used. An instrument is ambiguous only when the application of these rules leaves it unclear which of two reasonable meanings is the correct one. *Prairie Producing Co. v. Schlachter,* 786 S.W.2d at 413. We review a trial court's decision on a question of law de novo. *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex.1995); *Ely v. Briley,* 959 S.W.2d 723, 726 (Tex.App.— Austin 1998, no pet.).

After a careful review of the record, we conclude that the trial court erred both in finding the two 1948 deeds ambiguous and

---

**2.** *See Freeman v. Cherokee Water Co.,* 11 S.W.3d 480 (Tex.App.—Texarkana 2000, rev. den.)

in admitting extrinsic evidence to show the grantors' intent.

The trial court found the following granting language ambiguous: (1) W.R. Freeman and his wife Dessies' deed stating in pertinent part, "The Grantor and his children *living or visiting with him* are hereby given ... a right to fish ... [and] the right to anchor a boat on the shoreline ..." (emphasis added); (2) J.A. Freeman and his wife Lonies' deed stating in pertinent part, "[T]he Grantors *together with their children living or visiting with them* ... are hereby given the right to go upon the waters ... and fish therein ... [and] a right of way ... for the purpose of anchoring a boat ..." (emphasis added). The trial court determined that the *living or visiting with* language could be separated from the conjunctive *or* and constitute two separate phrases with two separate meanings. According to this construction, the children must be living *or* visiting with the grantors. In other words, because the qualifying words *with them* only appear after the word *visiting* and not after the word *living,* the children only must be living to claim the fishing and recreational rights. This interpretation is fundamentally flawed. First, it is clearly inconsistent with the requirement that, when construing a conveyance, we give effect to all parts and construe the document as a whole. *See Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 789 (Tex.1995). Second, it misconstrues what the conjunction *or* means. The word *or* is used to connect words, phrases, or clauses representing alternatives. RANDOM HOUSE DICTIONARY OF ENGLISH LANGUAGE 1360 (2d ed.1987). Simply put, the drafter of the *living or visiting with* language chose to include the word *or* as a way to connect the pronoun *them* with alternative adjectives *living* and *visiting.* Thus, instead of saying *living with them or visiting with them,* the drafter chose to make use of the commonly applied conjunction *or* to state the same proposition. Moreover, a differ-

ent construction would make the words *or visiting with them* meaningless. If the provision meant that all living children could exercise the rights, there would be no need to state that children visiting with them could also exercise those rights. We are required to give effect to all words used in the instrument, and we are not permitted to assume that the drafter of the instrument intended for some of the words to have no effect. *See Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966 S.W.2d at 465. Consequently, the language used in the two 1948 deeds is clear, and because it is capable of only one meaning, as a matter of law it is not ambiguous.

In light of the unambiguous nature of the language at issue, the trial court erred in admitting extrinsic evidence in an effort to ascertain the intent of the grantors. The testimony of Albert Freeman, the son of W.R. Freeman, that a Cherokee representative told him he could fish on Lake Cherokee forever, as well as the fishing cards given to him by Cherokee with the expiration date blacked out, suggests that perhaps the grantors' intent was to allow their children to fish on Lake Cherokee forever. Furthermore, in light of the condemnation proceedings and possible lawsuit against the grantors, this continuity idea is consistent with the circumstances that led to the deed to Cherokee. That notwithstanding, however, such extrinsic evidence is inadmissible when a deed is unambiguous and the language has a clear and definite meaning. As discussed earlier, as a reviewing court we are not called on to determine what the grantors meant to say, but the meaning of what they did say.

In its third point, Cherokee contends that the trial court erred by concluding it was the grantor of the rights to fish and anchor a boat. We do not reach this point, however, in light of the trial court's finding that Cherokee drafted all of the deeds.[3] Whether Cherokee *granted* these rights, as found by the trial court, or

---

**3.** Cherokee did not challenge this finding.

whether the Freemans, the grantors of the land, *reserved* these rights for themselves is of no consequence because the trial court found that Cherokee drafted the deeds, and that finding is unchallenged. Cherokee argues that since the Freemans are the grantors in the deeds, the various fishing and recreational rights constitute reservations by the Freemans, so any ambiguity should be construed in Cherokee's favor as the grantee. But it is not the identity of the grantor, but the drafter, that is important because the law requires that any doubt should be resolved against the scrivener. *See Texas Pac. Coal & Oil Co. v. Masterson,* 160 Tex. 548, 334 S.W.2d 436 (1960). The language will be construed strictly against the party who drafted the deed because the drafter is responsible for the language used. *See Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex.1990) (citing *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109 (Tex.1978)). This firmly established canon of construction is ultimately dispositive of the final point of error.

▆▆▆▆ In its fourth point, Cherokee contends that the trial court erred in construing the 1949 deed executed by James C. and Mattie Freeman to provide that the fishing and boating privileges survive the death of the grantors and are currently held by their heirs. As discussed earlier, the construction of a deed is a question of law. The court's primary duty when construing a deed is to ascertain the intent of the parties from all of the language contained within the four corners of the document. *Luckel v. White,* 819 S.W.2d at 461. If the intent of the parties as expressed by the language on the face of the document is doubtful, the court may resort to parol evidence to resolve the doubt. *Terrill v. Tuckness,* 985 S.W.2d 97, 101 (Tex.App.— San Antonio 1998, no pet.). Parol evidence may also be admitted to show the existence of a latent ambiguity, or in order for the court to apply the language used in the instrument to the facts and circumstances then existing. *Murphy v. Dilworth,* 137

Tex. 32, 151 S.W.2d 1004 (1941); *Templeton v. Dreiss,* 961 S.W.2d 645, 673 (Tex. App.—San Antonio 1998, pet. denied); *Benson v. Jones,* 578 S.W.2d 480 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). Where the true intent of the grantor, as indicated from the document as a whole, shows that the words used were intended to be given a commonly accepted meaning rather than a technical or legal one, such clearly manifested intent will be given effect. *See Holloway's Unknown Heirs v. Whatley,* 104 S.W.2d 646, 648 (Tex.Civ.App.—Beaumont 1937), *aff'd,* 133 Tex. 608, 131 S.W.2d 89 (1939); *see also Hopkins v. Hopkins,* 103 Tex. 15, 122 S.W. 15 (1909); *Simonton v. White,* 93 Tex. 50, 53 S.W. 339, 341 (1899). Where the words used have a technical or legal meaning and there is nothing in the deed, when construed as a whole, to show that any other meaning was intended, they will be given their legal meaning. *See Holloway's Unknown Heirs v. Whatley,* 104 S.W.2d at 648; *see also Singletary v. Hill,* 43 Tex. 588, 589 (1875); *Bergfeld v. Buer,* 8 S.W.2d 776, 778 (Tex.Civ.App.—Dallas 1928, writ ref'd); *Williamson v. Cowan,* 265 S.W. 745, 746 (Tex.Civ.App.—Waco 1924, writ ref'd). Additionally, as discussed earlier, if there is any doubt as to the proper construction of a deed, a court should resolve that doubt against the drafter. *See Texas Pac. Coal & Oil Co. v. Masterson,* 160 Tex. 548, 334 S.W.2d 436.

▆▆▆ We review a trial court's decision on a question of law de novo. *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d at 450; *Ely v. Briley,* 959 S.W.2d at 726. The distinguishing factor between the two 1948 deeds and the 1949 deed is the use of the word *heirs.* The two 1948 deeds referred to grantors and their *children,* while the 1949 deed in pertinent part states: "Grantors and their *Heirs* shall have the right to use said lot for and during the natural life of *either of them*" (emphasis added). Based on this language, the trial court concluded that the grantors intended for the rights to survive

their deaths and pass to their heirs. Cherokee, arguing that the rights do not survive the death of the grantors, contends that the *either of them* language refers only to the two grantors, James C. and Mattie Freeman, because the antecedent to the pronoun *them* is *grantors* and not *grantors and their heirs*. Cherokee advances this argument because the word *either* is defined as "one or the other of two alternatives." Because there were two *grantors*, James and Mattie, and multiple heirs, Cherokee contends that the word *either* must refer only to the two grantors and not to the class of *heirs*, so the interpretation must be that the rights terminate on the death of the last living grantor. This construction, however, overlooks the ancient maxim, *Nemo est haeres viventis*—*the living have no heirs*, which has been recognized in Texas since 1886. *Eckford v. Knox*, 67 Tex. 200, 2 S.W. 372, 372 (1886). Because technically the living have no heirs, under this construction, the fishing and recreational rights would terminate on the death of the grantors; hence, the language *and their heirs* would be rendered superfluous. This narrow interpretation suggests that the *grantors*, James and Mattie Freeman, intended to exclude their children and grandchildren from having the rights to fish and recreate described in the deed. In light of the foregoing discussion there appears to be a conflict between the word *heirs* and the phrase *for the natural life of either of them.*

We agree with the trial court that this provision in the third deed is ambiguous. In light of the apparent ambiguity between the phrases *grantors and their heirs* and *for the natural life of either of them*, we will resolve the doubt in favor of the Freemans and against the drafter, Cherokee. Because a person's heirs are not determined until his or her death, in an effort to give meaning to all the words contained in the deed, we conclude that the antecedent to the pronoun *them* is the last living grantor and the class of his or her *heirs*. Plainly stated, the grantors' heirs would not be determined until one of the grantors died, so *either of them* must refer to the last living grantor and his or her *heirs*.

Moreover, because there is doubt as to the proper meaning of the deed in light of these two conflicting phrases, the court properly considered extrinsic evidence to ascertain the facts and circumstances that existed at the time the deed was executed. Additionally, the use of the word *heirs* in the 1949 deed, executed after execution of the two 1948 deeds, each of which used *children*, indicates that the drafter, Cherokee, intended for the 1949 deed to have a different meaning. As a whole, the evidence indicates that the last thing the grantors would have intended is to exclude their children and grandchildren from the very rights that they had enjoyed just prior to deeding their property.

For the above stated reasons, we conclude that the trial court correctly found that the intent of the grantors expressed within the 1949 instrument was for their children and possibly their grandchildren, as their *heirs*, to enjoy the fishing and recreational rights on Lake Cherokee, and that the fishing and recreational rights reserved in the 1949 deed survived the death of the last living grantor and now belong to the grantors' heirs.

We reform the judgment to declare that the fishing and recreational rights reserved in the two 1948 deeds did not survive the deaths of the grantors, but that those reserved in the 1949 deed did survive the death of the last living grantor and now are held by that grantor's heirs.

ROSS, J., not participating.