COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

 

                                                                              )     

MARRS AND
SMITH, PARTNERSHIP,             )                    No. 
08-00-00386-CV

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       143rd District Court

                                                                              )

D.K. BOYD OIL AND GAS
COMPANY, INC., )                   of Loving
County, Texas

                                                                              )

Appellee.                           )                          (TC# 00-08-713)

 

 

O
P I N I O N

 

Marrs and Smith, Partnership (Marrs)
appeals from a summary judgment granted in favor of D.K. Boyd Oil and Gas
Company, Inc. (Boyd).  We affirm in part
and reverse in part.

FACTUAL SUMMARY

This
dispute pertains to the ownership of a large tract of land known as the Frying
Pan Ranch which consists of approximately 136,000 acres in Andrews, Loving, and
Winkler Counties in Texas and Lea County, New Mexico.  On December 10, 1996, the Scarborough-Linebery Foundation conveyed the entire surface estate of
the ranch and portions of the mineral estate to Boyd by warranty deed.  At the same time, Boyd conveyed partial
interests in the mineral estate to various parties including Marrs, which is an oil and gas operator on the ranch.  It is undisputed that Boyd did not convey the
surface estate to Marrs by this deed.








On
December 16, 1998, Boyd and Marrs signed the
following agreement:

Effective
December 10, 1998 for value and services received D. K. BOYD Oil and Gas Co.,
Inc. at P.O. Box 11351, Midland, Texas 79702, hereinafter referred to as Boyd,
agrees to pay Marrs & Smith Partnership at P.O.
Box 863, Kermit, Texas, 79745, hereinafter referred to as Smith, One Million
Seven Hundred Thousand dollars ($1,700,000.00), hereinafter referred to as the
Consideration on or before December 10, 2006. 
If on or before December 10, 2006 Smith has not yet received from Boyd
the consideration Boyd shall convey unto Smith a twenty percent interest in and
to the land as reflected in Exhibit A, hereinafter referred to as Subject
Lands, attached to and made a part hereof as well as a twenty percent interest
in all appurtenances associated with the Subject Lands as of December 10, 1998.

 

From
the effective date hereof until that time Smith has received the consideration
Smith shall have the right to claim twenty percent of the annual depreciation
of all depreciable items and appurtenances associated with the Subject Lands
for purposes of income tax reporting.

 

The
terms and conditions as set forth herein can be altered upon mutual written
agreement by both Boyd and Smith.  

 

Rickey
Smith is the managing partner and principle of Marrs
and Smith Partnership.  On January 5,
2000, Boyd sent a letter to Smith alleging that Marrs
had not complied with a separate agreement referred to as the Surface Damage
Agreement which the parties entered into on December 16, 1998.  With the letter, Boyd enclosed audit reports
from Cheyenne Land Management Services, Ltd., which had been employed to conduct
environmental audits in order to assist Boyd in assessing contamination of the
ranch caused by Marrs=
oil and gas operations.  Boyd suggested a
procedure which Marrs should follow for releases of
hydrocarbons, contaminating water, and other contaminates and it requested a
reclamation work plan.  Boyd also claimed
certain property which had been abandoned on the ranch by Marrs.  Finally, Boyd submitted a bill to Marrs for $132,870 in surface damage consideration and $66,190.10
for the audit work performed by Cheyenne. 









Smith
responded on behalf of the partnership by letter a few days later.  In addition to insisting that the Surface
Damage Agreement applied only to future drilling and production, he stated:

We would also at
this time like to call your attention to the agreement dated the 16th day of
December, 1998.  Common law says if a
party feels that at sometime during the length of an agreement that one party
feels that future actions by the other party may cause this note not be paid,
it can be called.  We do not feel you
will be able to make payment on this note, therefore please remit this payment
within 30 days.  Amount
due $1,700,000.00.  

 

Boyd=s attorneys sent another letter to Marrs on January 28, 2000, demanding that it comply with
the Surface Damage Agreement and identifying ten actions which Marrs had to perform in order to avoid litigation.  Instead of complying with the demand or
replying to the letter, Marrs filed suit on February
9, 2000, seeking reformation of the December 16, 1998 agreement, a declaratory
judgment, and damages.  Attached to the
petition is the agreement dated December 16, 1998 and
an Exhibit A.[1]  








According
to the pleadings, Marrs and Boyd negotiated to
purchase the Frying Pan Ranch in 1996 from a third party, and pursuant to an
agreement between the parties, Marrs owns an
undivided 20 percent interest in the surface estate subject to the December 16,
1998 agreement.[2]  Marrs paid cash for
its interest in the surface estate while Boyd entered into a promissory note
with the Farm Credit Bank of Wichita. 
The parties agreed that Boyd would take all proceeds received from the
surface estate and apply them to the promissory note.  Once the balance owed by Boyd had been
reduced, Farm Credit Bank would release 20 percent of the surface estate to
Smith.  Marrs
asserted that pursuant to the December 16, 1998 agreement, Boyd had the option
of purchasing its undivided 20 percent interest in the surface estate of the
Ranch.  Marrs
claimed that the parties reached this agreement on December 10, 1996 but did
not reduce it to writing until December 10, 1998.           Based
upon these factual allegations, Marrs sought a
declaratory judgment that it owns 20 percent of the surface estate subject to
Boyd=s option
to purchase its interest for $1.7 million on or before December 10, 2006.  Thus, Marrs sought
to have 20 percent of the surface estate released by Farm Credit Bank of
Wichita.  Claiming the existence of a
mutual mistake, Marrs requested reformation of the
agreement to show:  (1) the effective
date of the agreement as December 10, 1996; (2) conveyance of the 20 percent
interest in the surface estate; (3) the agreement for application of the
proceeds to the promissory note; and (4) the eventual release of Marrs=
interest upon payment of the promissory note. 
Finally, Marrs sought an accounting of all
proceeds received from the surface estate because it believed that Boyd had not
properly applied the proceeds to the note. 
Marrs sought to recover those funds which had
not been applied to the note pursuant to the agreement of the parties.  Marrs alleged
additional causes of action, including wrongful mortgage of the surface estate,
breach of fiduciary duties related to the mineral estate, a request for
accounting of lease proceeds, and conversion.








Boyd
filed a motion for partial summary judgment contending that Marrs
owns no interest in the surface estate of the Frying Pan Ranch because the
December 16, 1998 agreement does not convey an interest to Marrs
and there is no other written conveyance of the property as required by Section
5.021 of the Texas Property Code.  Boyd
additionally maintained that Marrs could not rely on parol evidence to show other agreements related to the
transaction or to explain or vary the terms of the December 16, 1998
agreement.  Boyd=s
motion was supported by a copy of the deed from the Scarborough-Linebery Foundation conveying the Frying Pan Ranch to
Boyd.  The summary judgment evidence also
included sworn testimony by Smith admitting that there is no deed conveying to Marrs a 20 percent ownership in the surface estate of the
Frying Pan Ranch.[3]  

In
response, Marrs claimed that it sought reformation of
the agreement to show that the parties intended to convey a 20 percent interest
in the surface estate to Marrs but because of a
mutual mistake did not do so.  Marrs attached to its response the affidavit of Rickey
Smith stating that Marrs owned a 20 percent interest
in the property by virtue of an agreement of the parties but they had made a
mistake in reducing the agreement to writing. 
Additionally, Marrs relied on the testimony of
Harold Skelton, the accountant for Marrs and Boyd, to
show that Marrs has since 1996 reported 20 percent of
the depreciation deduction related to the Frying Pan Ranch while Boyd has taken
80 percent of the depreciation deduction. 
Skelton made these allocations based upon his understanding of the
agreement between Marrs and Boyd.  Skelton offered his expert opinion that a
taxpayer may not properly take a depreciation deduction absent ownership in the
property or a long-term leasehold interest. 
The trial court later sustained Boyd=s
objections to Skelton=s
testimony and did not consider it as direct evidence on the issue of ownership
of the surface estate.[4]  








On
May 17, 2000, the trial court granted partial summary judgment in favor of
Boyd, finding that Marrs does not own any interest in
the surface estate and that Boyd has no present obligation to convey any
ownership interest prior to December 10, 2006. 
At Boyd=s
request, the trial court entered an order on August 28, 2000, severing  into a
separate cause of action all claims based upon and related to the surface
estate.  Marrs
perfected its appeal from the partial summary judgment on September 13,
2000.  It then filed a third amended
petition on September 15, 2000 alleging additional causes of action based upon
its purported ownership of the surface estate. 
On October 10, 2000, the trial court entered a Afinal
judgment@ that Marrs take nothing against Boyd, that Marrs
does not own any interest in the surface estate, and that Boyd has no present
obligation to convey any ownership interest in the surface estate of the Frying
Pan Ranch prior to December 10, 2006.  

SUMMARY JUDGMENT

In
four issues for review, Marrs challenges the granting
of summary judgment in favor of Boyd.  It
complains that the trial court erred in: 
(1) granting summary judgment on the declaratory judgment action; (2)
failing to consider parol evidence related to the
mutual mistake and oral agreements; and (3) failing to find that the agreement
is ambiguous.  Finally, Marrs claims there is a genuine issue of material fact
precluding summary judgment with respect to the mutual mistake cause of action.

Standard of Review








The
standard for reviewing a summary judgment granted under Texas Rule of Civil
Procedure 166a(c) is whether the successful movant at
the trial level carried the burden of showing that there is no genuine issue of
material fact and that judgment should be granted as a matter of law.  Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr=s
Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.‑‑El
Paso 1996, writ denied).  Thus,
the question on appeal is not whether the summary judgment proof raises fact
issues as to required elements of the movant=s cause or claim, but whether the
summary judgment proof establishes, as a matter of law, that there is no
genuine issue of material fact as to one or more elements of the movant=s
cause or claim.  Gibbs
v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Duran, 921
S.W.2d at 784.  In resolving these
issues, all evidence favorable to the non‑movant
must be taken as true and all reasonable inferences, including any doubts, must
be resolved in the non‑movant=s favor.  Nixon v. Mr. Property
Mgmt. Co., Inc., 690 S.W.2d 546, 548‑49
(Tex. 1985); Duran, 921 S.W.2d at 784.  When the defendant is the movant
and submits summary evidence disproving at least one essential element of each
of the plaintiff=s causes
of action, then summary judgment should be granted.  Wyatt v. Longoria,
33 S.W.3d 26, 31 (Tex.App.‑- El Paso 2000, no
pet.).

Reformation Due to Mutual Mistake








In
Issues Two and Four, Marrs challenges the granting of
summary judgment with respect to its claim of mutual mistake.  In order to be entitled to reformation of an
agreement, a party must plead either mutual mistake or unilateral mistake
accompanied by fraud or other inequitable conduct by the other party.  Coronado Transmission
Co. v. O=Shea, 703 S.W.2d 731, 735 (Tex.App.‑‑Corpus
Christi 1985, writ ref=d
n.r.e.); Spellman v. American Universal Investment
Co., 687 S.W.2d 27, 31 (Tex.App.‑‑Corpus
Christi 1984, writ ref=d
n.r.e.). 
Here, Marrs has alleged the existence of a
mutual mistake.  Reformation is available
to correct a mutual mistake made in preparing a written instrument so that the
instrument reflects the original agreement of the parties.  Wallerstein
v. Spirt, 8 S.W.3d 774, 781 (Tex.App.‑-Austin
1999, no pet.), citing Cherokee Water Co. v. Forderhause,
741 S.W.2d 377, 379 (Tex. 1987). 
Reformation requires two elements: 
(1) an original agreement and (2) a mutual mistake, made after the
original agreement, in reducing the original agreement to writing.  Wallerstein,
8 S.W.3d at 781. 
When mutual mistake is alleged, the task of the court is not to
interpret the language contained in the contract, but to determine whether the
contract itself is valid.  Williams v. Glash, 789 S.W.2d 261,
264‑65 (Tex. 1990); Green v. Morris, 43 S.W.3d 604, 607 (Tex.App.‑-Waco 2001, no pet.).  Further, the parol
evidence rule does not bar extrinsic proof of mutual mistake.  Santos v. Mid‑Continent
Refrigerator Co., 471 S.W.2d 568, 569 (Tex. 1971); Green, 43 S.W.3d
at 607.

By
its motion for partial summary judgment, Boyd sought to defeat Marrs=
claim to ownership in the surface estate of the ranch through its offer of
summary judgment evidence establishing that Boyd had never executed any
writing, including the December 16, 1998 agreement, which conveys or purports
to convey an interest in the ranch to Marrs.  However, Boyd did not expressly move for
summary judgment on Marrs=
claim of mutual mistake and reformation. 
Therefore, Boyd is not entitled to summary judgment on this claim.  See Tex.R.Civ.P. 166a(c).  Moreover, Boyd did not offer any evidence to
conclusively establish any element of that claim against Marrs.  The fact that the December 16, 1998 agreement
does not convey an interest to Smith is not dispositive
of his claim of mutual mistake. 
Consequently, Boyd failed to conclusively establish its entitlement to
summary judgment with respect to the mutual mistake claim.  Issues Two and Four are sustained.

Ambiguity in the Written Conveyance








In
Issue Three, Marrs contends that the December 16,
1998 agreement is ambiguous, and therefore, the trial court should not have
granted summary judgment without considering parol
evidence.  By its summary judgment
motion, Boyd urged that all of Marrs= claims must fail because it has no
interest in the property since there is no written conveyance.  Section 5.021 of the Texas Property Code
provides:

A conveyance of an
estate of inheritance, a freehold, or an estate for more than one year, in land
and tenements, must be in writing and must be subscribed and delivered by the
conveyor or by the conveyor=s
agent authorized in writing.

 

Tex.Prop.Code Ann. ' 5.021 (Vernon 1984).

There
is no longer a requirement, as there was at common law, that a deed or
instrument to effect conveyance of real property have all the formal parts of a
deed formerly recognized at common law or contain technical words.  Green v. Canon, 33 S.W.3d 855, 858 (Tex.App.‑-Houston [14th Dist.] 2000, pet. denied); Harlan
v. Vetter, 732 S.W.2d 390, 392 (Tex.App.‑-Eastland
1987, writ ref=d n.r.e.).  If, from
the whole instrument, a grantor and grantee can be ascertained, and if there
are operative words or words of grant showing an intention of the grantor to
convey title to a real property interest to the grantee, and if the instrument
is signed and acknowledged by the grantor, it is a deed which is legally
effective as a conveyance.  Green,
33 S.W.3d at 858; Harlan, 732 S.W.2d at 392.

 The summary judgment evidence conclusively
established that the Scarborough-Linebery Foundation
conveyed the Frying Pan Ranch to Boyd by warranty deed dated December 10,
1996.  It is likewise undisputed that the
Scarborough-Linebery Foundation did not convey a 20
percent interest in the surface estate of the Frying Pan Ranch to Marrs.  Consequently,
Marrs=s
claim of ownership rests exclusively on the December 16, 1998 agreement.













The
trial court determined that the December 16, 1998 agreement is unambiguous, and
consequently, refused to consider any parol evidence
as to the parties=
intention.  Before considering whether
the instrument is sufficient to convey the property, we must first decide
whether the agreement is ambiguous.  A
court=s primary
goal when construing a deed is to ascertain the true intention of the parties
as expressed within the four corners of the instrument.  Cherokee Water Co. v. Freeman, 33
S.W.3d 349, 353 (Tex.App.‑-Texarkana 2000, no
pet.), citing Luckel v. White, 819 S.W.2d 459,
461 (Tex. 1991).  The Afour corners@
rule requires the court to ascertain the intent of the parties solely from all
of the language in the deed.  Concord
Oil Co. v. Pennzoil Exploration & Production  Co., 966 S.W.2d 451, 465 (Tex. 1998);
Cherokee Water, 33 S.W.3d at 353. 
The intent that governs, however, is not the intent that the parties
meant but failed to express, but the intent that is expressed.  Cherokee Water, 33
S.W.3d at 353; Harlan, 732 S.W.2d at 392.  The process of deed construction has been
described as three-tiered:  (1) the court
attempts to ascertain the grantor=s
intent by examining the plain language of the deed; (2) the court then applies
applicable rules of construction to the deed; and (3) the court considers
extrinsic evidence to aid interpretation. 
Cherokee Water, 33 S.W.3d at 353, citing
Laura H. Burney, The Regrettable Rebirth of the Two Grant Doctrine in Texas
Deed Construction, 34 S.Tex.L.Rev. 73, 77‑78 (1993).  The third tier, the admission of extrinsic
evidence, is not reached unless the intent of the parties is unclear because
the deed is ambiguous.  Cherokee Water, 33 S.W.3d at 353, citing Stauffer v.
Henderson, 801 S.W.2d 858, 863 (Tex. 1990).  The question of ambiguity in a deed, as with
other written instruments, is a question of law.  Cherokee Water, 33
S.W.3d at 353.  A document or deed
that can be given a definite or certain legal meaning from the words used is
not ambiguous.  Stewart
Title Guaranty Co. v. Aiello, 941 S.W.2d 68, 74 (Tex. 1997); Cherokee
Water, 33 S.W.3d at 353.  If
the deed language is susceptible to a single meaning, the court will be
confined to the writing.  Cherokee
Water, 33 S.W.3d at 353.  If the language may be interpreted in
different ways, rules of construction may be used.  Id. 
An instrument is ambiguous only when the application of these rules
leaves it unclear which of two reasonable meanings is the correct one.  Id. 
We review de novo a trial court=s
determination of a question of law. 
Barber v. Colorado Independent School District, 901 S.W.2d 447, 450
(Tex. 1995); Cherokee Water, 33 S.W.3d at 353.

The
December 16, 1998 agreement does not evidence a present intent on the part of
Boyd to convey a 20 percent interest in the surface estate to Marrs.  Rather, the
agreement contemplates that in the event of Boyd=s
failure to pay Marrs $1.7 million dollars by a date
certain in the future, Boyd will then be obligated to convey the interest to Marrs.  Thus, Boyd
has the option to pay the consideration on or before December 10, 2006, or effect a conveyance of the property.  Marrs argues that
the agreement is ambiguous because it admittedly does not convey a present
interest in the property yet it permits Marrs to
claim 20 percent of the depreciation deduction. 
Marrs=
ability to claim a deduction for the depreciable assets on the Frying Pan Ranch
is irrelevant to its ownership of the surface. 
As for its contention that it claimed not only a deduction for the
depreciable assets but also for the land, it cites no authority for its
argument.  Consequently, we find no
ambiguity.  Absent ambiguity, the trial
court did not err in failing to consider parol
evidence.  Issue Three is overruled.

Marrs= Remaining Causes of Action

In
Issue One, Marrs contends that the trial court erred
in granting summary judgment on its claims for declaratory judgment, promissory
estoppel, and breach of contract because these
actions do not depend on the validity of the December 16, 1998 agreement as a
written conveyance of the property; instead, these actions were alleged as
alternative means to establish ownership in the Frying Pan Ranch.








With
respect to the declaratory judgment, Marrs sought a
declaration that it owned an undivided 20 percent interest in and to the
property; that it is entitled to execute agreements related to the surface
estate as a co-tenant of the surface estate; and that it has the right to use
and occupy the entire surface estate.  Because
each of the declarations sought is predicated upon an ownership interest in the
surface estate, the trial court=s
determination that Marrs has no present interest
disposed of the declaratory judgment action.

In
its breach of contract action, Marrs claims that Boyd
breached the agreement to convey a 20 percent interest in the surface estate of
the Frying Pan Ranch.  The December 16,
1998 agreement reflecting that Boyd would convey a 20 percent interest in the
surface estate if $1.7 million were not paid by a future date is entirely
contrary to Marrs=
claim that the parties had an agreement whereby Boyd would convey to Marrs a present interest in the land on or about
December 10, 1996.  In response to
the motion for summary judgment, Marrs did not
produce any evidence of a separate agreement between the parties.  Therefore, the trial court did not err in
granting summary judgment on this cause of action.








Finally,
Marrs complains that the court granted summary
judgment on its promissory estoppel claim by which it
alleged that Boyd promised to convey the property to it and represented to Marrs that it could take 20 percent of the depreciation
deduction.  Contending that it had been
claiming the deduction since 1996 to its detriment, Marrs
sought recovery of all income taxes due, interest, penalties, attorney=s fees, and accountant=s fees incurred in amending its income
tax returns. Promissory estoppel is an equitable
doctrine which does not create a contract where none existed before, but only
prevents a party from insisting upon his strict legal rights when it would be
unjust to allow him to enforce them.  Vida v. El Paso Employees=
Federal Credit Union, 885 S.W.2d 177, 181 (Tex.App.‑-El
Paso 1994, no writ).  The function
of the doctrine of promissory estoppel is defensive
in that it estops a promisor
from denying the enforceability of the promise. 
AMoore@ Burger,
Inc. v. Phillips Petroleum Co., 492 S.W.2d 934,
936 (Tex. 1972); Vida, 885 S.W.2d at
181.  The elements of
promissory estoppel are:  (1) a promise; (2) foreseeability
by the promisor that the promisee
would rely upon it; 
and (3) reliance upon the promise to the promisee=s detriment.  English v. Fischer,
660 S.W.2d 521, 524 (Tex. 1983); Vida, 885 S.W.2d at 181-82.

The
December 16, 1998 agreement established that Boyd made an executory
promise to convey a 20 percent interest in the surface estate in the event it
failed to pay the consideration on or before the due date of December 10,
2006.  This agreement is contrary to Marrs=
claim that Boyd conveyed, or promised to convey a present interest in the
property in 1996.  In its response to the
motion for summary judgment, Marrs relied upon the
affidavit of Rickey Smith.  The relevant
portion of the affidavit states as follows:

During 1996, D.K.
Boyd Oil and Gas Company, Inc., and Marrs and Smith
Partnership, among others, negotiated for the purchase of the surface and
mineral interests in the property commonly known as The Frying Pan Ranch.  As part of such agreement, Marrs and Smith Partnership owns
twenty percent (20%) of the surface estate in and to The Frying Pan Ranch.  The effective date of this agreement is
December 10, 1996.  . . .  The agreement attached to Plaintiff=s First Amended Original Petition
approximately two (2) years after our original agreement concerning the
ownership of The Frying Pan Ranch [sic]. 
Such agreement drafted by Boyd does not set forth all the terms and
conditions of our agreement.  The
additional terms and conditions of our agreement are set forth in Plaintiff=s First Amended Original Petition.

 








While
there may be a fact issue concerning the existence of an executory
promise to convey a present interest in the property, the affidavit fails to
address the remaining elements of promissory estoppel.  Consequently, the trial court did not err in
granting summary judgment as to this claim. 
Issue One is overruled.  Having
sustained Issues Two and Four, we reverse only that portion of the trial court=s order granting summary judgment with
respect to Marrs=
claim of mutual mistake and reformation. 
Having overruled Issues One and Three, we affirm the remainder of the
summary judgment.  This cause is remanded
for further proceedings pertaining only to Marrs= claim of mutual mistake and
reformation.

 

July 3, 2002

                                                                         

ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]  Exhibit A is a
document titled ASurface Estate@ and it
lists numerous sections of land in Winkler, Andrews, and Loving Counties,
Texas, and Lea County, New Mexico.  This
Exhibit A corresponds exactly to the Exhibit A attached to the warranty deed
given to Boyd by the Scarborough-Linebery
Foundation.  Boyd has steadfastly denied
that Exhibit A was actually attached to the December 16, 1998 agreement.





[2]  Marrs has not produced a writing evidencing this
agreement.  In fact, Marrs
has also taken the position that this agreement should have been included in
the December 16, 1998 agreement but was not due to mutual mistake of the
parties.





[3]  Marrs objected to this summary judgment evidence because
the transcription is uncertified by the court reporter, but the record does not
reflect a ruling by the trial court.  





[4]  Although the
trial court did not follow up its oral ruling on the objection to Skelton=s testimony with a written one, the court stated, in
granting partial summary judgment, that it had considered the Aproper summary judgment evidence.@  This
constitutes an implicit ruling.  See
Frazier v. Yu, 987 S.W.2d 607, 609 (Tex.App.‑-Fort
Worth 1999, pet. denied)(the existence of written objections and a recitation
that the court reviewed all competent evidence, creates an inference that the
trial court implicitly sustained objections to summary judgment evidence).  Because Marrs has
not challenged the trial court=s ruling on appeal, we will not consider Skelton=s testimony in our review of the summary judgment.