COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-361-CV

 

CRAIG B. SINGER AND                                                       APPELLANTS

CAROL G. SINGER

 

                                                   V.

 

FIRST BAPTIST CHURCH,                                                        APPELLEE

CARROLLTON, TEXAS

                                              ------------

 

            FROM THE
211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellants Craig B. Singer and Carol G. Singer
(the ASingers@) appeal
the trial court=s granting of summary judgment
in favor of Appellee First Baptist Church, Carrollton, Texas (AFirst
Baptist@).  Because we hold that the trial court erred by
granting First Baptist=s motion for summary judgment,
we reverse the trial court=s
judgment and remand this case for proceedings consistent with this opinion.

I.  Factual and Procedural History

This case arose out of a dispute over an interest
or right in a specific tract of land.  On
December 31, 1991, the Singers executed several documents conveying real estate
interests to the City of Carrollton (the ACity@).  One of these interests was a donation of a
6.451-acre tract of land referred to by the parties and described herein as ATract
II.@  The deed was titled, ADonation
Deed,@ and AProposed
Carrollton Parkway@ is written in small print in
the top right-hand corner of the deed.

That same day, the Singers and the City entered
into a separately drafted, unrecorded agreement titled, AAgreement
Regarding Donation of Real Property@ (the AAgreement@).  The Agreement recognized that the Singers
owned property in Denton County through which the A121
Bypass@Cthe
proposed state highway intended to connect State Highway 121 with Interstate
Highway 35Cwas to extend.  In exchange for the Singers=
donation of Tract II to the City, the City agreed that Tract II was to be used
as Carrollton Parkway and that the City would Atake no
action to change the location of Carrollton Parkway or the Carrollton Parkway
Design Schematic.@ 
The Agreement further provided,








If for any reason whatsoever, Carrollton Parkway does not or cannot
substantially conform in all material respects to the 121 Design Schematic and
the Carrollton Parkway Design Schematic, then [the City] shall, upon the
written demand of [the] Singers, reconvey to the Singers by Warranty Deed and
such other documentation as may reasonably be requested by [the] Singers, that
portion of the Donation previously conveyed by the Singers pursuant to the
Carrollton Deeds and not used in the actual construction of Carrollton Parkway,
and the Singers shall further have the right to seek injunctive relief and
recovery from Carrollton for any and all damages sustained by the Singers.

 

The Agreement inures to the benefit of the parties=
successors and assigns.   On September 4,
1997, the Singers conveyed by special warranty deed four tracts of land to Elm
Fork Ranch Partners, Ltd., (AElm Fork@),
including two tracts of land (ATracts I
and III@)
adjacent to Tract II.  The Singers
granted to Elm Fork Aall rights and appurtenances
pertaining [to Tracts I and III] and all right, title and interest of [the
Singers] in and to adjacent streets, alleys, strips and gores and
rights-of-way.@ 
The deed was made subject only to those matters set forth in an attached
exhibit, but it does not describe any interest or right that the Singers had
with regard to the City.

On December 13, 2001, Elm Fork conveyed to First
Baptist by special warranty deed Tracts I and III (one was 41.926 acres and the
other was 66.623 acres).  On that same
date, Elm Fork executed a quitclaim deed to First Baptist, quitclaiming its
right, title, and interest, if any, to Tract II.








The City ultimately decided to relocate
Carrollton Parkway to a more northerly location.  Consequently, the Singers claimed that the
City had triggered the condition specified in the Agreement whereby the City
agreed to reconvey Tract II to the Singers if Carrollton Parkway did not
conform to the design schematic previously agreed upon.  They requested that the City reconvey the
subject property in a letter to the City dated December 9, 2004. 

On May 18, 2005, First Baptist sued the
Singers.  They alleged in their second
amended petition that the Singers=
interest in Tract II as set forth in the Agreement is a right of reentry.  First Baptist alleged that the Singers
transferred by special warranty deed the right of reentry to Elm Fork in 1997
when they conveyed to Elm Fork all of their right, title and interest to all
rights of way adjacent to Tracts I and III, and Elm Fork subsequently assigned
this alleged right of reentry to First Baptist. 
Accordingly, First Baptist sought a declaratory judgment that Ait is
the owner of the Right of Reentry@ and
that Athe
Singers no longer have any right, title, or interest in and to the Right of
Reentry or to any cause of action, whether for injunctive relief or for
damages, relating in any respect to the Right of Reentry or to Tract II.@








First Baptist subsequently filed a motion for
summary judgment on its requested declarations, arguing, among other things,
that Tract II is a right of way, that the interest claimed by the Singers is a
right of reentry, and that the Singers=
conveyance to Elm Fork of all of their right, title, and interest in rights of
way expressly included the Singers=
interest in Tract II.  The Singers responded,
claiming that the City and Elm Fork are necessary parties to the litigation and
that fact issues exist regarding the rights that First Baptist received  pursuant to the quitclaim deed from Elm Fork
and the complexity of the underlying transactions and relief sought.  They also argued that Tract II is not a right
of way, that there is no right of reentry in the Donation Deed, and that their
rights under the Agreement have not been conveyed.

The trial court granted First Baptist=s motion
for summary judgment.  The trial court=s order
declares that First Baptist is the assignee and current owner of the right of
reentry set forth in the Agreement and that the Singers have no right, title,
or interest in the right of reentry and Ano cause
of action, whether for injunctive relief or for damages, relating in any
respect to the Right of Reentry or to such Tract II.@  This appeal followed.








In eight issues, the Singers argue that the trial
court erred (1) by granting summary judgment in favor of First Baptist; (2) by
declaring that First Baptist is the assignee and current owner of a right of
reentry; (3) by declaring that the Singers have no right, title, or interest in
and to the alleged right of reentry; (4) by declaring that there is a right of
reentry; (5) by declaring that they have no cause of action relating to the
alleged right of reentry; (6) by granting summary judgment relating to a tract
of land with a legal description that differs from the Donation Deed; (7) by
granting summary judgment in the absence of a necessary party, the City; and
(8) by granting summary judgment in the absence of Elm Fork, a necessary party.

II.  Summary Judgment Standard of Review

In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.[2]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[3]

When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant's favor.[4]  Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.[5]








The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.[6]  The function of summary judgment practice is
not to deprive a litigant of the right to a jury trial, but to eliminate
patently unmeritorious claims and untenable defenses.[7]

III.  Tract II Interest

In their second through fourth issues, the
Singers argue that the trial court erred by granting First Baptist=s motion
for summary judgment.  The focus of their
arguments is that Tract II is not a right of way but a fee, that the Donation
Deed itself contains no right of reentry, and that they did not convey or
assign their rights under the Agreement to Elm Fork.

A.  Deed
Construction








The cardinal rule applied in construing written
instruments, including deeds, is to give effect to the intention of the parties
as expressed by the language used in the instrument.[8]  When the terms of a deed plainly and clearly
disclose the intention of the parties, or when the language used is not fairly
susceptible to more than one interpretation, the intention of the parties must
be ascertained by the court as a matter of law from the language used in the
writing.[9]  This rule of construction is known as the Afour
corners@ rule.[10]  When a deed is intended as a complete
memorial of a legal transaction, parol evidence is inadmissible to show prior
or contemporaneous agreements relating to that transaction or to explain or
vary the terms of the deed.[11]  If a contract or deed is found to be
ambiguous, however, parol evidence is admissible to ascertain the true intent
of the parties.[12]  A deed is not ambiguous when the parties
merely disagree about its interpretation.[13]

First Baptist and the Singers merely disagree
about the interpretation of the Donation Deed. 
Further, our review of the deed reveals no ambiguity on its face.  Accordingly, the deed=s
construction is a question of law.

 

 








B.  Tract
II

The sole source of the interest claimed by First
Baptist is the Arights-of-way@
language contained in the deed evidencing the Singers= conveyance
of Tracts I and III to Elm Fork.  First
Baptist argues that Tract II is a right of way and that the Singers transferred
their right to reconveyance of Tract II, which is contained in the Agreement,
when they conveyed Tracts I and III and all of their right, title, and interest
to adjacent rights of way to Elm Fork, who subsequently quitclaimed its
interest in Tract II to First Baptist. 
If Tract II is not a right of way, then First Baptist has no interest
therein.

The Donation Deed evidencing the donation of
Tract II to the City provided in part,

That, Craig B. Singer and wife Carol G. Singer . . . do Grant, Give,
and Convey unto the City of Carrollton, State of Texas, Grantee, all that
certain tract or parcel of land in Denton County, Texas, more particularly
described in Exhibit AA@, attached hereto and
incorporated by reference for all purposes (ALand@).

 

SAVE and EXCEPT, HOWEVER,
it is expressly understood and agreed that Grantors are retaining title to the
fences, if any, located on the above described property.

 

. . .
. 

 

Grantors reserve all of
the oil, gas, sulphur, and all other minerals and materials in and under the
land herein conveyed but waive all rights of ingress and egress to the surface
thereof for the purpose of exploring, developing, mining or drilling for same.

 








The Donation Deed refers to the tract as Aland@
throughout the document, and the attached exhibit introduces the property as
being a Atract of
land@ before
setting forth the metes and bounds descriptions.  There is no reference to a right of way.

First Baptist cites the definition of Aright of
way@ in
Black=s Law
Dictionary as the Aright to build and operate a
railway line or a highway on land belonging to another, or the land so used.@[14]  Black=s Law
Dictionary also defines Aright of way@ as the
right to pass through property by another that may be established by contract,
by longstanding usage, or by public authority (as with a highway), or the strip
of land subject to a nonowner=s right
to pass through.[15]

To support its assertion that Tract II is a right
of way, First Baptist directs us to the language in the top right-hand corner
of the Donation Deed, which states, AProposed
Carrollton Parkway.@ 
This language, however, does not transform the property into a right of
way:








It has long been the
settled law in this state that where a deed contains apt language denoting the
grant of an unconditional fee estate in land, other language contained in the
instrument which denotes that the land was granted for a particular purpose is
not regarded as implying that the grant is conditional.[16]

 

We agree with the Singers that the notation of AProposed
Carrollton Parkway@ on the Donation Deed might
describe the City=s intended use for the land, but
it does not change the type of interest conveyed.








Citing Texas Electric Railway Co. v. Neale,[17]
First Baptist reasoned in oral argument that a right of way can be a fee
simple.  In Neale, the deed had an
apparently unrestricted granting clause but later contained the term Aright of
way@ and
stated a use for the right of way.[18]  The supreme court noted that A[t]he
term >right of
way= has a
two-fold signification.  It sometimes is
used to describe a right belonging to a party, a right of passage over any
tract; and it is also used to describe that strip of land which railroad
companies take upon which to construct their road-bed.@[19]  The court went on to hold that the stated
restriction on use by the grantee did not define or limit the estate or title
granted and that a fee title was conveyed.[20]  The court explained, AThere do
appear in the deed words which show the purpose for which the grant is made,
but those words do not undertake to reduce or debase what has been granted from
a fee title to a mere easement.@[21]  The court thus differentiated between a fee
simple and a right of way, contrary to First Baptist=s
contention.  Similarly, in the case
before us, although there are words on the deed that show the purpose for which
Tract II was granted, they do not Areduce
or debase what has been granted from a fee title@ to a
mere right of way.[22]    First Baptist also points to documents in
which the City, the Singers, and First Baptist Ahave
repeatedly referred to and recognized Tract II as a right-of-way.@  They cite to City Council minutes and an IRS
form executed by the City, among other things. 
But this is parol evidence that may not be used to explain or vary the
terms of the unambiguous deed.[23]








Moreover, the Singers did not relinquish their
right of reconveyance when they sold Tracts I and III to Elm Fork.  The deed evidencing the conveyance of Tracts
I and III to Elm Fork from the Singers provides, AThis
conveyance is made subject only to the matters set forth on Exhibit >B=
attached hereto and incorporated herein by this reference for all purposes, to
the extent the same are valid and subsisting and affect the Property.@  Exhibit B lists, among other things, a
temporary easement granted by the Singers to the City, but it does not describe
the Singers= right to demand a reconveyance
of Tract II.  This alleged right is
instead found in the Agreement, which was apparently not filed in the real
property records and is not part of the Singers/Elm Fork deed.  The four corners rule for deed construction
requires the court to ascertain the intent of the parties solely from the
language in the deed.[24]  Nothing else in the deed demonstrates any
intent on behalf of the Singers to transfer their right to reconveyance of
Tract II to Elm Fork.








First Baptist argues alternatively that the
Singers= right
to reconveyance of Tract II ran with the land. 
In Texas, a real property covenant runs with the land when it touches
and concerns the land, relates to a thing in existence or specifically binds
the parties and their assigns, is intended by the parties to run with the land,
and when the successor to the burden has notice.[25]  First Baptist=s
argument is unpersuasive because the Singers donated Tract II to the City, not
to Elm Fork, and the right to reconveyance concerns Tract II, not Tracts I and
III.[26]  There is no summary judgment evidence that
Elm Fork ever took any interest in Tract II, and the Singers= right
to reconveyance of Tract II does not Arun with
the land@ of
Tracts I and III just because they are in close proximity to Tract II.

First Baptist further appears to argue that the
Singers assigned their right to reconveyance of Tract II to Elm Fork, who
subsequently quitclaimed its interest to First Baptist.  The Singers admit that the contract is
assignable because the Agreement states that it Ashall
inure to the benefit of, and shall be binding upon the parties hereto, their
heirs, executors, administrators, successors and assigns.@  But this is essentially the same argument
that First Baptist asserts above but couched in different terms.  There is no summary judgment evidence that
the Singers assigned their rights under the Agreement to any party, including
the City, Elm Fork, or First Baptist.








We hold that the Donation Deed conveyed a fee
simple with no restriction on use, not a right of way.  Even assuming that a right of way can be a
fee simple that has a descriptive purpose, the Donation Deed is insufficient to
limit  the purpose as such and is thus
insufficient to transfer a restricted right of way.  Because the Donation Deed conveyed a fee
simple, Elm Fork took no interest in Tract II by way of the Singer deed.  Consequently, First Baptist took no interest
by way of Elm Fork=s subsequent deed quitclaiming
its interest in Tract II.  Elm Fork
quitclaimed the interest it had in Tract IICnone.  Accordingly, because First Baptist did not
meet its burden of establishing that it was entitled to summary judgment as a
matter of law, the trial court erred by granting First Baptist=s motion
for summary judgment.[27]  We sustain the Singers= second,
third, and fourth issues.  In light of
our holding sustaining the Singers= second,
third, and fourth issues, we need not address their remaining issues.[28]

 

 

 

 

 

 








IV.  Conclusion

Having sustained the Singers= second,
third, and fourth issues, we reverse the trial court=s
judgment and remand this case for proceedings consistent with this opinion.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  July 13, 2006

 











[1]See Tex. R. App. P.
47.4.





[2]Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).





[3]Sw. Elec. Power Co., 73 S.W.3d at 215.





[4]Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 





[5]Great Am. Reserve Ins. Co. v. San Antonio Plumbing
Supply Co., 391 S.W.2d 41, 47 (Tex.
1965).





[6]Clear Creek Basin, 589 S.W.2d at 678.





[7]Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).





[8]Luckel v. White,
819 S.W.2d 459, 461 (Tex. 1991).





[9]Cherokee Water Co. v. Freeman, 33 S.W.3d 349, 353 (Tex. App.CTexarkana
2000, no pet.).





[10]Luckel, 819
S.W.2d at 461.





[11]Terrill v. Tuckness, 985 S.W.2d 97, 101 (Tex. App.CSan Antonio 1998, no pet.).





[12]Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 283 (Tex. 1996).





[13]Terrill, 985
S.W.2d at 102.





[14]Black=s Law Dictionary 1351 (8th ed. 2004).





[15]Id.





[16]Watts v. City of Houston, 196 S.W.2d 553, 556 (Tex. Civ. App.CGalveston
1946, writ ref=d) (citing Toole v. Christ Church, Houston,
141 S.W.2d 720, 722 (Tex. Civ. App.CGalveston 1940, writ ref=d)).





[17]252 S.W.2d 451, 454 (Tex. 1952); see also Lakeside
Launches, Inc. v. Austin Yacht Club, Inc., 750 S.W.2d 868, 871 (Tex. App.CAustin
1988, writ denied).





[18]Neale, 252
S.W.2d at 453-54.





[19]Id. at 454
(quoting Joy v. City of St. Louis, 138 U.S. 1, 44, 11 S. Ct. 243, 256
(1891)).





[20]Id. at
454-55.





[21]Id. at 454.





[22]See id.





[23]Terrill, 985
S.W.2d at 101.





[24]Cherokee Water Co., 33 S.W.3d at 353.





[25]Inwood N. Homeowners=
Ass=n, Inc. v. Harris, 736 S.W.2d 632, 635 (Tex. 1987).





[26]See Panhandle & S.F. Ry. Co. v. Wiggins, 161 S.W.2d 501, 504-05 (Tex. Civ. App.CAmarillo
1942, writ ref=d w.o.m.) (reasoning that covenant must be contained
in the grant of land or in the grant of some property interest therein and that
there must be a mutual or successive relationship to the same rights of
property).





[27]See Tex. R. Civ. P.
166a(c); Sw. Elec. Power, 73 S.W.3d at 215.





[28]See Tex. R. App. P.
47.1.